**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,**

v.

**W AND W STEEL COMPANY, INC., Defendant-Appellant.**

**No. 79–1600.**

United States Court of Appeals, Tenth Circuit.

Argued Aug. 2, 1979.

Decided Aug. 28, 1979.

---

Thomas L. Holzman, Atty., Washington, D. C. (Carin A. Clauss, Sol. of Labor; Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health; Allen H. Feldman, Acting Counsel, for appellate litigation; and Charles I. Hadden, Acting Asst. Counsel for Appellate Litigation, U. S. Dept. of Labor, Washington, D. C., on brief), for plaintiff-appellee.

Jack T. Crabtree, Oklahoma City, Okl. (Buck & Crabtree, Oklahoma City, Okl., on brief), for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

In an *ex parte* proceeding, the Secretary of Labor obtained an inspection warrant

from a United States Magistrate sitting in Albuquerque, New Mexico. The inspection warrant, which was sought following an employee complaint, authorized entry into the Albuquerque plant of W and W Steel Company by a compliance officer of the Occupational Safety & Health Administration (OSHA) in Albuquerque, for the purpose of inspecting and investigating work conditions within the tank construction welding area. The warrant also authorized a review of company records "directly related to the purpose of the inspection."

Following an earlier unsuccessful warrantless inspection, a compliance officer of OSHA, armed with the warrant above referred to, twice presented himself at the plant of W and W Steel Company and demanded entry. Such entry was refused. The Secretary then filed a complaint in the United States District Court for the District of New Mexico seeking to have the W and W Steel Company and its officers held in contempt for their refusal to comply with the warrant. A show cause order issued. By way of response, W and W Steel Company filed a motion to dismiss the Secretary's complaint and to vacate the show cause order and to quash the warrant.

Upon hearing, the trial court held W and W Steel Company in contempt and ordered the Company to pay a penalty of $500 per working day, the penalty to continue until such time as W and W Steel Company purged itself of contempt by permitting the Secretary's duly authorized representative to inspect the tank welding area maintained by W and W Steel Company. W and W Steel Company now appeals the order of court adjudging it to be in contempt, and the penalty imposed in connection with that order. We granted a stay of the trial court's contempt order, and set an expedited briefing schedule. The matter was also orally argued on an expedited basis and is now ready for final determination.

In our view, the principal issue is whether the Secretary had the authority to obtain the inspection warrant ex parte, or, on the contrary, must notice have been given W and W Steel Company to the end that the latter could have appeared and contested the issuance of the warrant in a trial setting. Some background facts should be set forth if the critical issue is to be viewed in context.

On April 10, 1979, the Albuquerque Area Office of OSHA received a written, signed complaint from one Herman Sedillo, a W and W Steel Company employee, alleging the existence of an unsafe condition in the W and W Steel Company's plant. Specifically, the complaint stated that welding was being performed in a confined space without adequate ventilation or respiratory protection. The OSHA area office evaluated this complaint in accord with its established office procedures. On April 17, 1979, an OSHA compliance officer attempted to conduct a warrantless inspection of W and W Steel Company's plant, but was refused entry. Seven days later the compliance officer reinterviewed the complainant, Herman Sedillo, and ascertained by supplemental information that the allegedly hazardous conditions continued to exist.

On May 16, 1979, application was made to the United States Magistrate for an ex parte inspection warrant. The application contained an affidavit of the compliance officer, together with Sedillo's original letter of complaint and a statement which Sedillo had later given. On that same day the Magistrate, after finding "probable cause," issued a warrant for the inspection of the tank welding area in W and W Steel Company's plant.

As previously indicated, OSHA compliance officer Lacy attempted to execute the aforementioned warrant on May 16, 1979, and again, on May 21, 1979, but on each occasion was denied entry onto the W and W Steel Company work site. The Secretary then instituted the present proceedings.

29 U.S.C. § 657(a) authorizes the Secretary, upon a proper showing of credentials, "to enter without delay" any factory or plant to inspect and to investigate working conditions, structures, machinery, and the like, as well as to question privately the employer or his employees. No mention is made in the statute concerning the need for

a warrant before entry. The Supreme Court in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), however, held that an inspection under 29 U.S.C. § 657(a) without a warrant or its equivalent violated the Fourth Amendment. We are of course here concerned with an attempted entry and inspection pursuant to a warrant.[1]

29 U.S.C. § 657(g)(2) provides as follows:

The Secretary and the Secretary of Health, Education, and Welfare shall each prescribe such rules and regulations as he may deem necessary to carry out their responsibilities under this chapter, including rules and regulations dealing with the inspection of an employer's establishment.

In 1971, pursuant to this delegated rule-making authority, and after notice and comment, the Secretary promulgated that which now appears as 29 C.F.R. § 1903.4. That regulation outlines the steps to be followed by a compliance officer when an employer refuses him entry. In short, under that regulation the compliance officer is to terminate his inspection or attempted inspection and thereafter attempt to determine the reason for such refusal. He shall then report the refusal and the reason therefor to his Area Director, and the latter shall next immediately consult with the Assistant Regional Director and the Regional Solicitor, "who shall promptly· take appropriate action, *including compulsory process, if necessary.*" (Emphasis added.)

Effective December 22, 1978, 29 C.F.R. § 1903.4 was amended, without notice and comment, by an "interpretative rule" which, *inter alia*, defined the term "compulsory process" appearing in that regulation to include *ex parte* warrants. 43 Fed.Reg. 59,839 (1978). Notice of this revision was not given, nor was there any public participation therein. In this regard, the Secretary noted in his interpretative rule as follows:

This amendment is made pursuant to section 8(g)(2) of the Act (29 U.S.C. § 657) and Secretary of Labor's Order No. 8–76 (41 FR 25059), in implementation of the general inspection and investigation authority conferred by section 8(a) of the Act. General notice of proposed rule-making, public participation therein and delay in effective date are not required by 5 U.S.C. § 553, since this section is an interpretive rule, general statement of policy and rule of agency procedure and practice. *Id.*

■ Under the 1978 amendment to 29 C.F.R. § 1903.4, which now appears as 29 C.F.R. § 1903.4(d), it would appear that the Secretary may apply, *ex parte*, for the issuance of an inspection warrant, and that legal notice need not be given the employer before such issuance.[2] The warrant in the instant case issued May 16, 1979, nearly five months after the 1978 amendment. It is W and W's position in this regard, however, that the 1978 amendment was not properly promulgated and was therefore ineffective. Specifically, according to W and W, the Administrative Procedure Act requires notice and a public hearing before the amendment could become effective, and in thus arguing relies on *Cerro Metal Products v. Marshall*, 467 F.Supp. 869 (E.D.Pa.1979). We are not persuaded.

■ By its own terms the rule-making requirements of 5 U.S.C. § 553 do not apply to an interpretative rule, general statements of policy, or rules of agency organization, procedure or practice. We agree with the Secretary that 29 C.F.R. § 1903.-

1. In *Barlow's* the Supreme Court indicated that an administrative search made pursuant to an *ex parte* warrant would not violate the Fourth Amendment.

2. Prior to the adoption of the 1978 amendments to § 1903.4, the Secretary was required, pursuant to his own regulations, to attempt to complete an inspection without a warrant prior to seeking "compulsory process." By such regulation, an employer was necessarily on actual notice that the Secretary intended to seek such process. This is, of course, to be distinguished from the "legal" notice sought by W and W in this appeal. We are not here concerned with the validity of other amendments to § 1903.4, which purportedly permit the Secretary or other designees to seek an *ex parte* warrant prior to attempting an inspection without a warrant.

4(d) was an interpretative rule whereby the term "compulsory process" was defined to include *ex parte* warrants.[3] Such being the case, the 1978 amendment, § 1903.4(d), was effective and in force on the date when the warrant issued in the present case.

W and W Steel Company alternatively argues that, assuming the Secretary had the right to obtain the warrant *ex parte*, and without prior legal notice, such was nonetheless issued without probable cause. The Supreme Court in *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) stated quite clearly that probable cause "in the criminal law sense" is not required in an administrative proceeding of the present type. In this regard the Supreme Court commented as follows:

> For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]." *Camara v. Municipal Court*, 387 U.S. [523] at 538, 87 S.Ct. 1736, [18 L.Ed.2d 930]. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights. *Id.* at 320–21, 98 S.Ct. at 1824.

In line with *Barlow's*, see *Matter of Carlson*, 580 F.2d 1365 (10th Cir. 1978), where we recently held that the "probable cause" requirements of the Fourth Amendment in relation to the issuance of search warrants in conjunction with administrative proceedings cannot be equated with the "probable cause" requirement of the "traditional" Fourth Amendment search in a criminal law setting.

■ We agree with the trial court that the magistrate had probable cause to issue the inspection warrant here under attack. The magistrate had before him the original signed written complaint of Herman Sedillo which stated that ventilation and respiratory protection measures in the tank welding area within W and W's plant were inadequate. In addition, the magistrate also had the written narrative statement given by Sedillo to OSHA officials, as well as an independent verification of Sedillo's status as an employee of W and W Steel Company. Finally, the compliance officer of OSHA filed with the magistrate his own affidavit setting forth the steps he had taken in an effort to check and verify the complaint. Such is sufficient in our view to support a finding of probable cause based on "specific evidence of an existing violation," as mentioned in *Barlow's*.

■ An alternative attack on the inspection warrant pertains to that part of the warrant which requires the production of certain company records. It is said that such request is too broad in its scope. We do not agree. The warrant only authorizes the inspection of that part of the plant where tank welding is being conducted. And the records which the warrant requires

---

**3.** We are here concerned with an administrative agency's interpretative rule defining a term used in one of the agency's previously issued legislative rules. This is not an agency rule interpreting statutory language, nor on the other hand, is it agency exercise of a delegated power to make law through rules, in which event the agency would have to give notice and invite comment. 29 C.F.R. § 1903.4 *was* an agency exercise of a delegated power to make law through rules. The 1978 amendment, § 1903.4(d), was an agency interpretative rule simply defining a term previously used in a legislative rule. For a general discussion on the distinction between legislative rules and interpretative rules, see 1978 Supplement to Davis, *Administrative Law Treatise*, § 5.03. For a case holding that an agency rule interpreting and defining a phrase used in a previously issued legislative rule was not itself a legislative rule, but an interpretative rule, and therefore exempt from the notice and hearing requirements, see *Garelick Mfg. Co. v. Dillon*, 114 U.S.App.D.C. 218, 313 F.2d 899 (D.C.Cir. 1963).

to be produced are only those records "directly related to the purpose of the inspection." We interpret this to mean only those records directly related to the work being carried on in the tank welding area. Such a request, in our view, is not overly broad in scope.

Judgment affirmed.