**Raymond J. DONOVAN, Secretary of Labor, Petitioner-Appellee,**

v.

**FALL RIVER FOUNDRY CO., INC., Respondent-Appellant.**

No. 82–2676.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1983.

Decided July 7, 1983.

---

See also, 7 Cir., 696 F.2d 524.

Michael Ash, Godfrey & Kahn, S.C., Milwaukee, Wis., for respondent-appellant.

Andrea C. Casson, U.S. Dept. of Labor, Washington, D.C., for petitioner-appellee.

Before PELL and BAUER, Circuit Judges, and GRAY, Senior District Judge.*

PELL, Circuit Judge.

Fall River Foundry Co., Inc. (Fall River or foundry) appeals from the district court's order holding that a warrant obtained by the Occupational Safety and Health Administration (OSHA) for inspection of the Fall River facility was not violative of the foundry's Fourth Amendment rights by reason of its alleged overbreadth. The district court cited Fall River for civil contempt for refusing to permit the inspection. The principal issue on appeal concerns the permissible scope of an OSHA warrant issued in response to specific employee complaints.

* William P. Gray, Senior District Judge for the Central District of California, sitting by designation.

## I. FACTS

In February, 1980, OSHA received written complaints from employees of Fall River. As summarized on the standardized OSHA Complaint form, the hazards complained of were as follows:

1. Core room—employees exposed to gases used in isocure core machines. Core boxes leak.
2. Herman Department—excessive noise from lump breaker.
3. Herman Department—employees exposed to silica and other dusts.
4. Herman Department and lower cleaning room—odor from certain cores used on the Herman are making some employees ill.
5. Herman Department—sand additives are blowing down on employees when being induced into the sand system.
6. Melt department—employees exposed to fumes and smoke from melting furnaces.

The Secretary of Labor determined that there were reasonable grounds to believe that such violations existed. Through his OSHA compliance officer, the Secretary applied to a magistrate for a warrant to conduct an investigation pursuant to section 8(f)(1) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 657(f)(1) (Act). In applying for the warrant, the compliance officer listed the hazards enumerated above. The third unhealthful condition listed on the OSHA Complaint form was phrased more broadly in the sworn warrant application as "[e]xpos[ure] to excessive amounts of silica and other dusts *throughout the shop.*" (emphasis added).[1]

A warrant was issued by the magistrate on March 31, 1980. The language of the warrant tracked that of the application, permitting inspection in order to determine, in pertinent part, whether employees were "[e]xposed to excessive amounts of silica and other dusts throughout the shop" and of "all pertinent conditions, structures, machines, apparatus, devices, equipment, ma-terials, and all other things therein (including records, files, papers, processes, controls, and facilities) bearing on whether this employer is furnishing to its employees employment and a place of employment which are free from recognized hazards."

When the warrant was served on Fall River on April 1, 1980, the foundry manager refused to permit the inspection. Fall River, and apparently the Secretary as well, read the warrant as authorizing a full-scale administrative search that would include entry into the administrative offices of the foundry and examination of the company records contained in the office. Fall River believed such a warrant to be unconstitutionally overbroad. On April 22, 1980, in response to OSHA's petition, the district judge issued an order requiring Fall River to show cause why it should not be adjudged in contempt for failure to permit the inspection. The order specified that service of the order to show cause should be made upon Fall River by certified mail.

The foundry responded to the show cause order by filing a motion to dismiss and a motion to quash the Inspection Warrant. The motion to dismiss alleged a number of jurisdictional grounds including an assertion that the district court lacked jurisdiction because service of process by certified mail was insufficient. The Motion to Quash contended that the full-scale inspection warrant was improper because the employee complaints pertained to only a limited area of the foundry. On September 14, 1982, the district court entered an opinion and order upholding the validity of the warrant and finding Fall River in civil contempt.

In December, 1982, a panel of this court declined to stay execution of the warrant. *Donovan v. Fall River Foundry Co.,* 696 F.2d 524 (7th Cir.1982). Following that decision, an inspection was made. The inspection was limited to the four specific areas of the plant named in the complaints: the core

---

1. The Application for Inspection Warrant stated that the "complaints" were attached as Exhibit A. Exhibit A, however, was the standardized OSHA Complaint form quoted above. The actual complaints submitted by employees do not appear in the record.

department, the Herman department, the lower cleaning room, and the melt department.[2] The inspection, as executed, required scrutiny of only a limited number of Fall River's records, such as the log of occupational injuries and illnesses and the lead exposure records. Apparently, Fall River has not contested its obligation to make these records available to the OSHA inspectors.

## II. SERVICE OF PROCESS

[1] Fall River urges that the service of process of the order to show cause was deficient. The foundry contends that service by certified mail was insufficient under both the pertinent Wisconsin statute and Rule 4 of the Federal Rules of Civil Procedure.

At oral argument before this court, the Secretary asserted that the foundry was no longer in contempt of court because of the limited search conducted by OSHA following this court's refusal to stay execution of the warrant. *See Donovan v. Fall River Foundry Co.,* 696 F.2d 524 (7th Cir.1982). The question whether service of process was deficient relates *only* to the district court's finding of civil contempt. Because the contempt has been purged, *see Blocksom & Co. v. Marshall,* 582 F.2d 1122, 1124 (7th Cir.1978), the service of process issue is moot and will not be addressed further by this court.

## III. SCOPE OF THE WARRANT

The primary issue raised by Fall River on appeal pertains to the scope of the warrant. In holding that the warrant did not violate Fall River's Fourth Amendment rights, the district court referred specifically to the foundry's contention that the warrant was overbroad insofar as it permitted search of the administrative offices and the records located therein. Fall River urges that its

objection to the breadth of the warrant should not be read so narrowly. The foundry argues that, even if investigation of the office were not at issue, the warrant is unconstitutional because it authorized inspection of areas of the foundry about which no specific complaints had been received. We first address whether a warrant authorizing search of the entire operational facilities of the plant would have been constitutional in view of the specific employee complaints. Second, we discuss separately the warrant's authorization for a search of records found in the administrative offices.

### A. Scope of the Warrant Generally

The starting point of the inquiry regarding what portions of the foundry should have been subject to search is this court's opinion in *Burkart Randall Division of Textron, Inc. v. Marshall,* 625 F.2d 1313 (7th Cir.1980) (*Burkart Randall*). The principal argument addressed in Part IV of the *Burkart Randall* majority opinion was the company's assertion that no probable cause existed for an inspection of the entire facility because employee complaints had referred only to specific hazardous or unhealthy conditions.[3] Writing for the majority, Judge Sprecher held that:

> where probable cause to conduct an OSHA inspection is established on the basis of employee complaints, the inspection need not be limited in scope to the substance of those complaints.... There may be cases in which extraordinary circumstances would render such an inspection unreasonably broad, but this is not such a case.

*Id.* at 1325–26.

Judge Wood dissented. He reasoned that because the warrant application presented to the magistrate contained no information

---

**2.** This limited search took place after the case was fully briefed before this court. All facts relating to this inspection, as developed *supra* and in following sections of this opinion, were stated by the parties at oral argument.

**3.** The warrant issued for the Burkart Randall search contains the same standardized language, patterned on 29 U.S.C. § 657(a)(2), authorizing search of "all pertinent conditions" that is quoted in Section I of this opinion from the Fall River warrant. *See Burkart Randall,* 625 F.2d at 1327 n. 1 (Wood, J., dissenting).

concerning the layout or operation of the Burkart Randall plant, the magistrate, like this court on review, had no way of determining whether violations might exist in parts of the facility not specified in the employee complaints. As a result, the magistrate had no basis for determining that a plantwide search was reasonable. *Id.* at 1327 (Wood, J., dissenting). Because the specific complaints referred to unhygienic conditions in the press department, including rest rooms in poor repair and unsanitary eating conditions, and inadequate fire escapes near the production line, Judge Wood stated that the inspection should have been limited to the press room. At the most, he would have permitted it to extend to rest rooms, eating facilities, and areas relating to fire safety in other portions of the plant. *Id.* at 1327, 1328 (Wood, J., dissenting).

In his concurring opinion, Judge Fairchild stated:

> As to the principles which should govern determination of the scope of a search, however, I find much that is persuasive in Judge Wood's dissent. I particularly share the view that this question should ordinarily be identified and presented to the magistrate in the application for the warrant with whatever other information might be relevant.

*Id.* at 1326 (Fairchild, J., concurring). Judge Fairchild joined the decision to affirm the district court decision in *Burkart Randall* only because the "types of hazards named in the employee complaints seem to be sufficiently diffuse to sustain the magistrate's determination that a search of the entire workplace was reasonable." *Id.*

Two courts of appeals have cited *Burkart Randall* as exemplifying the view that "once an employee complaint establishes probable cause, the inspection need not be limited in scope to the substance of the complaint." *Donovan v. Burlington Northern Inc.,* 694 F.2d 1213, 1215 (9th Cir.1982); *accord, West Point-Pepperell, Inc. v. Donovan,* 689 F.2d 950, 962 (11th Cir.1982). *Burkart Randall* cannot properly be read, however, as holding that employee complaints *always* justify issuance of a full-scale warrant. Both Judges Wood and Fairchild stated that the possibility violations exist outside the areas identified in employee complaints should be brought to the attention of the magistrate upon application for a warrant. Because the application process is generally an *ex parte* proceeding, it is the responsibility of the Secretary to make this showing.

The Ninth Circuit has twice relied on *Burkart Randall* in concluding that warrants authorizing a full-scale inspection were justified in response to employee complaints. *Donovan v. Burlington Northern Inc.,* 694 F.2d 1213 (9th Cir.1982); *Hern Iron Works, Inc. v. Donovan,* 670 F.2d 838 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 69, 74 L.Ed.2d 69. In both cases, the employee complaints included allegations of ventilation defects and the court of appeals held that the magistrate could reasonably have believed that inspection of the entire premises was necessary to detect other ventilation hazards. *Burlington Northern,* 694 F.2d at 1216; *Hern,* 670 F.2d at 841.[4]

Both *Hern* and *Burlington Northern* are consistent with the result in *Burkart Randall.*[5] The alleged ventilation defects in the

---

**4.** The Third Circuit, by contrast, found that the language of section 8(f) of the Act, 29 U.S.C. § 657(f), required that the scope of an OSHA inspection must bear an appropriate relationship to the violation alleged in employee complaints. *Marshall v. North American Car Co.,* 626 F.2d 320 (3d Cir.1980). *Contra, Burkart Randall,* 625 F.2d at 1326 (expressly rejecting limitation based on statutory language). In *West Point-Pepperell, Inc. v. Donovan,* 689 F.2d 950 (11th Cir.1982), the court found it unnecessary to resolve whether specific employee complaints would justify inspection of

an entire facility because the warrant issued in that case was limited to areas directly related to the employee complaints. *Id.* at 963.

**5.** *Burlington Northern* implies, however, that the Secretary has no duty to present information to a magistrate regarding the layout of a facility when seeking a warrant. 694 F.2d at 1215. To the extent that such information would be relevant to whether a full-scale search was justified, *Burkart Randall* is not fully in accord with the result in *Burlington Northern. See Burkart Randall,* 625 F.2d at

Ninth Circuit cases, like the complaints of unsanitary conditions in *Burkart Randall*, are conditions that one could reasonably believe indicative of similar hazardous or unhealthy conditions throughout a facility. A warrant authorizing a full plant-wide inspection in such a case is justified.

In the instant case, the areas in which unhealthy conditions existed, according to the employee complaints, are in close proximity to each other and together comprise only 10,522 square feet of a building with more than 60,000 square feet of floor space. These areas, which comprise what we shall term the "complaint area," are separated from the rest of the building by permanent concrete block walls running from floor to ceiling. The complaint area is at the opposite end of the foundry from the administrative offices, which were apparently also subject to search pursuant to the warrant. The complaint area utilizes its own air pressurization system, electrical system, heating system, ventilating system, and water supply system.

For the unhealthy conditions complained of at Fall River to infect the rest of the foundry, they would need either to be spread from the complaint area through the rest of the facility or they would have to reoccur in other portions of the foundry. Given the physical separation of the complaint area, it is unlikely that the unhealthy conditions would have been transmitted to other parts of the facility. Further, the conditions complained of by Fall River employees relate to specific machinery and furnaces located in the complaint area. Unless these machines and furnaces are duplicated in other parts of the foundry, there is little reason to believe that the unhealthy conditions would reoccur outside the complaint area. In this sense, there is a clear contrast between this case and *Burkart Randall* because it is most likely that restrooms, possibly unsanitary, and fire escapes,

possibly inadequate, were spread throughout the Burkart Randall facility.

*Burkart Randall* does not mandate a plantwide inspection of a facility whenever employees complain to OSHA about specific conditions that they believe to be hazardous or unhealthy. If a general warrant is sought, there should be some evidence presented to the magistrate supporting the belief by OSHA that the deleterious conditions may also be present in other portions of the facility. If one reads the employee complaints as enumerated on the standardized OSHA Complaint form, *see* Section I *supra,* which was attached to the warrant application as Exhibit A, there is little basis on which to conclude that the allegedly unhealthy conditions might exist outside the complaint area.

The Secretary asserts that the magistrate did have sufficient basis for finding that plantwide violations might exist because one of the employee complaints asserted that "excessive amounts of silica and other dusts [were present] *throughout the shop*" (emphasis added). Although the sworn warrant application includes the "throughout the shop" language, the standardized OSHA Complaint form lacks that phrase and appears to limit the complaint regarding silica and dusts to the Herman Department.[6]

The Secretary correctly states that in *Burkart Randall* this court found that a compliance officer's sworn statement, incorporated into the warrant application, provided sufficient verification as to the content of employee complaints. 625 F.2d at 1320. *Burkart Randall* did not, however, involve an attachment to the warrant application, prepared by OSHA and purporting to list the employee complaints, that materially differed from the compliance officer's sworn statement.

If we were compelled, which we are not, to resolve this appeal solely with regard to

---

1326, 1327 (Fairchild, J., concurring; Wood, J., dissenting).

**6.** The OSHA Complaint form, appended to the warrant application, states as item 3: "Herman

Department—employees exposed to silica and other dusts." The sworn statement lists as item (d): "Exposed to excessive amounts of silica and other dusts throughout the shop."

whether probable cause for a full-scale inspection existed on the basis of the "throughout the shop" language that appears in the sworn statement but is absent on the Complaint form, we would be faced with an extremely difficult task. Fall River suggests two problems in relying on the inclusion of "throughout the shop." The first is that the compliance officer may have "hyperbolized" in his sworn statement. While we would be extremely reluctant to characterize a statement made under oath as hyperbole or exaggeration, we do agree with Fall River that the reference to silica and dusts "throughout the shop" is ambiguous in light of the statement on the Complaint form that these conditions were reported in the Herman Department.

■ It is established that an OSHA warrant application need not include the specific employee complaints in the form that they were submitted to OSHA and that no additional verification of the compliance officer's sworn summary is required. *Burkart Randall,* 625 F.2d at 1320. This does not mean, however, that a general warrant should issue in the face of two inconsistent—and arguably conflicting—documents, both prepared and submitted to a magistrate by the Secretary.

As stated above, this appeal need not be resolved on this issue. The warrant issued for the Fall River inspection was worded broadly enough to support OSHA's apparent contention that the administrative offices and all company records contained therein were subject to search. We turn to the issue raised by this aspect of the warrant.

### B. Search of Administrative Office and Company Records

There are express statutory requirements as to the records that an employer must keep and must make available to the Secretary. 29 U.S.C. § 657(c)(1), (2), (3). These include a log of work-related deaths, injuries, and illnesses, *id.* § 657(c)(2), and employee exposure to certain toxic or harmful physical agents, *id.* § 657(c)(3). These specific records have apparently been made available to the Secretary during the recent, limited inspection without any protest by Fall River.

Fall River's complaint is that the language of the warrant permitted inspection of all "records, files, papers . . . bearing on whether this employer is furnishing to its employees employment and a place of employment which are free from recognized hazards." On its face, this language limits inspection neither to those records explicitly mentioned in the statute and regulations thereunder nor even to those records that might be directly pertinent to the specific conditions as to which Fall River employees had complained. Fall River contends that this broad authorization, combined with those aspects of the warrant that justified search of the entire foundry, permits OSHA to examine any and every document of the foundry kept in the administrative offices.

The Third Circuit recently held that the *only* statutory authority for an inspection of documents was the administrative subpoena power of the Secretary provided for in section 8(b) of the Act, 29 U.S.C. § 657(b). *In re Inspection of Kulp Foundry, Inc.,* 691 F.2d 1125, 1132 (3d Cir.1982); *accord, In re Inspection of Inland Steel Co.,* 492 F.Supp. 1310, 1314–16 (N.D.Ind.1980). In *Kulp,* the Third Circuit upheld the district court's quashing and severing of that portion of an inspection warrant authorizing inspection of documents. 691 F.2d at 1132–33. The language of the warrant at issue in *Kulp,* insofar as it provided for inspection of documents, was identical to that of the warrant issued for the Fall River inspection. *Id.* at 1127. In footnote, the *Kulp* court stated that it did not reach the issue whether a subpoena was required in order to reach those records specified in section 8(c) of the Act, 29 U.S.C. § 657(c). 691 F.2d at 1132 n. 18. The documents not reached by the *Kulp* decision are similar to those as to which Fall River has made no protest. *Kulp* would therefore support a quashing of that portion of the Fall River

warrant that provided for inspection of any other foundry documents.[7]

Fall River did not rely on the *Kulp* rationale below and the Secretary urges us not to consider it on appeal. In the circumstances of this case, it is unnecessary to resolve this appeal on a ground that received no attention from the district court and only passing mention from the parties. While we neither endorse nor reject the reasoning of the Third Circuit at the present time, *Kulp* is important because it represents a recent manifestation of the ongoing concern demonstrated by courts that the Act not lead to unwarranted intrusions into an employer's records.

The Supreme Court has stated: "Delineating the scope of a search with some care is particularly important where documents are involved." *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 324 n. 22, 98 S.Ct. 1816, 1826 n. 22, 56 L.Ed.2d 305 (1978).[8] At least two courts of appeals, other than this court, have implied that the documents examined pursuant to a section 8(f) inspection must be related to the specific complaints made by employees. In *Marshall v. W & W Steel Co.,* 604 F.2d 1322, 1326–27 (10th Cir.1979), the Tenth Circuit rejected the employer's argument that the portion of a warrant pertaining to inspection of documents was too broad. The court noted that the warrant required production of only those records " 'directly related to the purpose of the inspection.' " *Id.* at 1327. The Tenth Circuit interpreted that language to mean that only records pertinent to work in the tank welding section, which was the object of the

inspection, were sought. *Id.* Similarly, in *West Point-Pepperell, Inc. v. Donovan,* 689 F.2d 950, 963 (11th Cir.1982), the court rejected the district court's conclusion that the warrant at issue was overbroad. The court not only found that the medical records sought were pertinent to specifically alleged violations of the Act but further found that "the warrant explicitly limits the records that the Secretary may examine to those required to be maintained by the Act and regulations." *Id.*

Although both the *W & W Steel* and *West Point-Pepperell* courts found the document search authorizations permissible in scope, both warrants at issue in those cases sought a limited class of records. The scope of the documents sought in the Tenth and Eleventh Circuit cases is in sharp contrast to the language of the warrant here that would permit a potentially unlimited examination of foundry records.[9]

This court addressed the scope of a warrant authorizing the inspection of documents in *Blocksom & Co. v. Marshall,* 582 F.2d 1122, 1125 (7th Cir.1978). The warrant at issue in *Blocksom* provided, like the Fall River warrant, for inspection of all "records, files, [and] papers' 'bearing on' the safety of Blocksom's working environment." The court remanded the case in order to permit the employer to assert his Fourth Amendment argument, *inter alia,* in defense to the citation for civil contempt issued by the district court. Although this court expressed no views as to the proper

---

**7.** In *Kulp,* the company argued that the entire warrant should be quashed. The court did not address that question because a search had been conducted and no citations were issued pursuant to it. *Kulp's* appeal as to the overbreadth of the warrant generally was therefore held to be moot. 691 F.2d at 1128–29, 1133 n. 19.

**8.** As noted by the *Inland Steel* court, the question whether documents could be inspected absent a subpoena was not decided in *Barlow's.* The Supreme Court made the point that no inspection of documents of the scope contemplated by NIOSH regulations could be effected without a warrant. *In re Inspection of Inland Steel Co.,* 492 F.Supp. 1310, 1316 (N.D.Ind. 1980) (citing *Marshall v. Barlow's, Inc.,* 436

U.S. 307, 324 n. 22, 98 S.Ct. 1816, 1826 n. 22, 56 L.Ed.2d 305 (1978)).

**9.** In two cases, the Ninth Circuit has construed language identical to that contained in the Fall River warrant, insofar as it pertains to an inspection of records, as being "properly restricted." *Hern Iron Works, Inc. v. Donovan,* 670 F.2d 838, 841 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 69, 74 L.Ed.2d 69; *accord, Donovan v. Burlington Northern Inc.,* 694 F.2d 1213, 1216 (9th Cir.1982). Although it is not established by either the *Hern* or *Burlington Northern* opinion what documents were sought by the Secretary, we disagree with the Ninth Circuit's conclusion that the warrant language was specific on its face.

disposition of the question, it expressly noted that the district court "may well decide that the documentary production required by the warrant was described with inadequate specificity." *Id.*

The scope of the document search in this case was allegedly limited neither to those documents kept pursuant to 29 U.S.C. § 657(c) nor to documents pertaining to the complaint area nor to those relating specifically to the alleged unhealthy conditions. To the extent that the Secretary construed the warrant as sanctioning an "inspection" of the administrative offices themselves, as distinct from permitting the Secretary to request that documents be made available for inspection, the potential intrusion was all the greater. This interpretation would have permitted OSHA personnel to examine *all* company documents in an effort to determine what might be relevant to its inspection.

### C. Summary

*Burkart Randall* does not mandate that employee complaints always justify issuance of a general warrant authorizing the inspection of an entire facility about which complaints have been received by OSHA. If the Secretary chooses to seek such a full-scale warrant, there should be some showing by the Secretary as to why such a broad warrant is appropriate in that particular case. Further, the showing requires more than a sworn statement that is contradicted by a separate OSHA-prepared document.

■ The need for appropriate specificity and limitations is greatest when the Secretary seeks documents and records of the employer. Very few, if any, reported violations would justify OSHA personnel's rummaging through the entire files of a company in order to determine what, if any, information pertinent to the employee complaints might be found. The Secretary has an obligation to limit its inspection of documents to those that bear some clear relevance to the conditions about which complaints have been received.

### IV. IMPACT OF LIMITED SEARCH

Initially, it is important to note that, despite the limited search of the Fall River facility OSHA conducted in late 1982 or early 1983, this case is not moot. Both parties recognize that should citations issue against Fall River, pursuant to the limited search, Fall River might contest them on the theory that they resulted from a search that violated the Fourth Amendment because of the overbreadth of the warrant. *See In re Inspection of Kulp Foundry, Inc.,* 691 F.2d 1125, 1128–29 (3d Cir.1982) (case moot because modified warrant had been fully executed and *no citations issued*).

At oral argument, the Secretary urged this court, should it find the original warrant overbroad, to vacate only those portions of the warrant that permitted inspection of other than the complaint area. Our disposition in *Rockford Drop Forge Co. v. Donovan,* 672 F.2d 626 (7th Cir.1982), offers support for the court's power to construe a warrant as being more limited than the language utilized in the warrant requires. In *Rockford Forge,* the language of the warrant limited inspection to specific areas of the plant and areas within plain view of the compliance officer. *Id.* at 631. The district court rejected the employer's argument that the warrant was overbroad because the Secretary had indicated that he interpreted the warrant to reach only the complaint areas. On review, this court affirmed the district court's holding that the warrant was not overbroad, stating: "[T]o avoid further disputes we will limit the warrant's scope to those [complaint] areas." *Id. Cf. United States v. Christine,* 687 F.2d 749 (3d Cir.1982) (redaction of criminal warrant consistent with Fourth Amendment), *cited in In re Inspection of Kulp Foundry, Inc.,* 691 F.2d 1125, 1133 n. 19 (3d Cir.1982).

■ As executed, the Fall River warrant was limited to the complaint areas and the only records sought were those the Secretary had a specific statutory right to examine, *see* 29 U.S.C. § 657(c), and regarding which Fall River made no complaint.

Nothing in the search, as conducted, violated Fall River's Fourth Amendment rights.

Fall River stated at oral argument that this court should not "reform" the warrant to reflect the scope of the actual investigation because to do so would abrogate the warrant requirement. The foundry argues that such after-the-fact limitation of a warrant will encourage magistrates to issue very broad warrants and leave the scope of the actual investigation to negotiation.

We are not persuaded by Fall River's argument. Although Fall River has repeatedly alleged the Secretary's intention of searching every possible inch of its facility, including the administrative offices, that search did not occur. Because this case was decided by the district court before any search occurred, it is impossible to know whether the investigation originally envisioned by OSHA would have been impermissible in scope. We share the reluctance, exhibited by the *Rockford Drop Forge* court, to invalidate totally a warrant that is susceptible to constitutional interpretation. This is particularly the case here because a permissible search has been made and the Secretary has stated, on the record before this court, that OSHA has no intention of attempting to conduct any further investigation of Fall River pursuant to this warrant.

The purpose underlying the Act is to protect employees from unhealthy and unsafe working conditions. If citations issue against Fall River as a result of the limited search, they will relate to conditions about which employees complained and which indeed require correction as soon as possible. We do not believe that the purposes of the Act would be served by permitting Fall River to escape accountability because of a hypothetically intrusive search that might have—but, in fact, did not—occur.

## CONCLUSION

Fall River's arguments pertaining to service of process are moot because that issue pertains only to the contempt citation and Fall River has been purged of contempt. As to the scope of the warrant, the warrant is modified to reach only the complaint area and to extend only to those documents that Fall River is statutorily required to make available to the Secretary. With that modification, the judgment of the district court upholding the validity of the warrant is

AFFIRMED.