**Robert B. REICH,\* Secretary of Labor, United States Department of Labor, Petitioner–Appellee,**

**v.**

**MONTANA SULPHUR & CHEMICAL COMPANY, Respondent–Appellant.**

**No. 93–35076.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1994.

Decided Aug. 26, 1994.

---

\* Robert B. Reich, the current Secretary of Labor, is substituted for former Secretary Lynn Martin. *See* Fed.R.App.P. 43(c)(1).

I

Montana Sulphur & Chemical Company (MSCC) is a chemical manufacturer which deals with hazardous materials, including hydrogen sulfide. On December 10, 1991, the Billings office of the Occupational Safety & Health Administration (OSHA) received a phone call from an individual purporting to be an employee of MSCC. The individual revealed a detailed knowledge of MSCC's plant and described numerous alleged health hazards. On request, the individual agreed to come to OSHA's office to sign a written complaint.

The signed complaint alleged six unsafe conditions; the only allegation relevant to this case was a contention that MSCC did not x-ray its welds or certify its welders. If true, this posed a safety hazard because improper welding could rupture and result in the release of lethally toxic chemicals.[1] OSHA's area director reviewed the complaint and, based on the complaint and the information provided in the telephone call, determined that an inspection was warranted. OSHA arranged with MSCC to inspect its plant in January.

Two OSHA inspectors visited MSCC's plant over a five or six day period for several hours each day. During this visit, they interviewed MSCC managers and employees. They were permitted to review MSCC documents. The inspectors learned that MSCC welders were certified by a private company, Chen Northern. Employees interviewed said they could not remember having ever x-rayed welds. Supervisor Ronald Benson explained that MSCC tested its welds using water pressure tests instead.

Subsequent to this visit, OSHA sought six general categories of documents to supplement what it had learned. The request was framed in general terms, and sought documents relating to "1) Welding procedures utilized. 2) Procedures used in the qualification of welders. 3) Filler metal control procedures. 4) X-ray specifications. 5) Design specifications. 6) Piping and instrument diagrams." At this point, MSCC refused fur-

Brian K. Gallik, James H. Goetz, Goetz, Madden & Dunn, Bozeman, MT, for respondent-appellant.

Terri P. DeLeon, Barbara Werthmann, U.S. Dept. of Labor, Washington, DC, for petitioner-appellee.

Before: POOLE, BRUNETTI and KLEINFELD, Circuit Judges.

POOLE, Circuit Judge:

In this appeal from a subpoena enforcement order, we revisit the boundaries limiting an administrative agency's ability to conduct preliminary investigations.

---

1. MSCC's plant held numerous chemicals in vessels connected by piping; its welds connected its piping to the containment vessels.

ther cooperation unless OSHA provided it with a copy of the original complaint and specific citation to its regulatory authority for requesting the listed documents. MSCC also expressed concern that some of the documents covered by the request were proprietary in nature. OSHA's response failed to satisfy MSCC.[2]

When further negotiations proved fruitless, OSHA consulted with its welding expert and prepared a subpoena seeking seventeen categories of documents.[3] When MSCC refused to produce the documents, OSHA sought court enforcement. MSCC resisted enforcement and sought discovery, alleging that OSHA was issuing the "expanded" subpoena as retaliation for MSCC refusal to comply with the earlier document request. A magistrate held a one-day evidentiary hearing to resolve contested issues and, concluding that

the subpoena had been filed for a legitimate purpose, recommended enforcement and denial of MSCC's motion for further discovery. The district court adopted the magistrate's conclusions and ordered enforcement.

On appeal, MSCC raises numerous objections to the enforcement order. MSCC argues that the subpoena is unauthorized because it is both unrelated to any OSHA regulations and unrelated to the complaint that generated it. The company also contends that the subpoena violates its Fourth Amendment rights. In any event, according to MSCC, the subpoena should have been quashed because it was issued for an improper purpose.

We review de novo the district court's decision regarding enforcement of an agency subpoena. See EPA v. Alyeska Pipeline Serv. Co., 836 F.2d 443, 446 (9th Cir.1988).[4]

**2.** The parties dispute whether OSHA ever cited to a specific regulation, 29 C.F.R. § 1910.106, or simply relied on 29 C.F.R. §§ 1910 and 1926, two very long sections of the Code. No findings of fact were made in this regard. As our decision will make clear, it does not matter whose version is correct.

**3.** The subpoena demands:

Any and all documents which reflect wholly or in part the following:
1) Safety and health program handbooks for the Montana Sulphur and Chemical Company;
2) Minutes of safety and health meetings for the period January 1, 1989 to the present;
3) Reprimands for violations of safety and health rules by employees of the Montana Sulphur and Chemical Company for the period January 1, 1990 to the present;
4) Welding procedure specifications used to qualify all welders performing work on the UOP, Hydrogenation, and Monaca units and associated piping;
. . .
5) Procedure qualification records for all welders performing work on the UOP, Hydrogenation, and Monaca units and associated piping;
6) Quality control manual/procedures for any and all welding operations conducted on the UOP, Hydrogenation, and Monaca units and associated piping;
7) Filler metal control procedures used for any and all electrodes and/or any other type of filler metal used in making all welds in the UOP, Hydrogenation, and Monaca units and associated piping;
8) Welding procedures used in making all welds in the UOP, Hydrogenation, and Monaca units and associated piping;

9) Log of all individuals performing welding in the UOP, Hydrogenation, and Monaca units and associated piping including their test dates, test methods, and any re-test dates from January 1, 1991 to the present;
10) Documentation of previous ASME certifications and use for all vessels used in the UOP, Hydrogenation, and Monaca units, including all documentation of the original design specifications including composition of vessel metals;
11) Engineering/Technical specifications used in the design of the piping systems associated with the UOP, Hydrogenation, and Monaca units;
12) Specifications and records of all Nondestructive Examinations performed on all vessels and associated piping in the UOP, Hydrogenation, and Monaca units from January 1, 1991 to the present;
13) Specifications and records of all pressure tests performed on the vessels and associated piping in the UOP, Hydrogenation, and Monaca units from January 1, 1991, to present;
14) Piping and instrument diagrams for the UOP, Hydrogenation, and Monaca units;
15) All operations log books dating from January 1, 1991 to the present;
16) All logs maintained in the maintenance foreman's office on major repairs to equipment dating from January 1, 1991 to present;
17) All work orders performed by all maintenance employees dating from January 1, 1991 to present.

**4.** During the pendency of this appeal, both the district court and this court denied MSCC's motion for stays of the subpoena's enforcement. As a result, MSCC has now produced most and possibly all of the documents required by the

## II

■ OSHA, like most government agencies, has the power to require the production of documents through the issuance of administrative subpoenas. 29 U.S.C. § 657(b). This power is not self-enforcing; if OSHA's subpoena is resisted, it must seek judicial enforcement. *Id.* The test for whether the courts should enforce such an administrative subpoena is well-established:

The scope of the judicial inquiry in an EEOC or any other agency subpoena enforcement proceeding is quite narrow. The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation.

*EEOC v. Children's Hosp. Medical Ctr.*, 719 F.2d 1426, 1428 (9th Cir.1983) (en banc); *see Reich v. National Eng'g & Contracting Co.*, 13 F.3d 93, 98 (4th Cir.1993) (applying same test to OSHA subpoena).

We consider in turn whether each part of this test is met.[5]

## A

OSHA is authorized by 29 U.S.C. § 657(f), § 8(f) of the OSH Act, to conduct investigations in response to employee complaints to determine whether an alleged "violation or danger" exists. MSCC contends that this authorization does not justify the document request OSHA made.

MSCC's argument rests on two contentions regarding the appropriate scope of OSHA's authority in seeking documents. First, it argues that OSHA is limited by the presence or absence of specific regulations addressing the problem raised in the complaint. Second, it argues that OSHA is strictly limited by the scope of the complaint in response to which OSHA is investigating.

We disagree. Neither the OSH Act nor past precedent warrant constricting OSHA's authority in these ways.

## 1.

■ In MSCC's view, the pivotal fact in this case is that OSHA has no regulations regarding the x-raying of welds or the certification of welders. MSCC reasons that because no OSHA regulations govern welding, there are no regulations which MSCC could be violating, and thus there was nothing for OSHA to investigate. Because OSHA could not identify any regulations which might be being violated, its investigation amounted to a fishing trip in the hopes of finding violations.

Even assuming MSCC is correct and no regulations apply, we reject this argument for two reasons. First, it reverses the investigatory process long since approved by the Supreme Court by requiring OSHA to charge first and investigate later. The power of an agency to investigate "is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*,

---

subpoena. However, this does not render the appeal moot, because our decision will still have collateral consequences. *See EPA v. Alyeska Pipeline Serv. Co.*, 836 F.2d 443, 445 (9th Cir. 1988) (subpoena appeal not moot because reversal would result in documents being returned); *Donovan v. Fall River Foundry Co.*, 712 F.2d 1103, 1111 (7th Cir.1983) (agency warrant appeal not moot because citations arising from inspection might be challenged based on overbreadth of warrant).

**5.** Even if the test is met, a Fourth Amendment "reasonableness" inquiry must also be satisfied. *Children's Hospital*, 719 F.2d at 1428. We address the Fourth Amendment concerns separately in § III, *infra*.

Additionally, MSCC argues for the first time in its reply brief that OSHA should be required to prove a fourth element, that it doesn't possess the information requested. MSCC derives this requirement from IRS cases and out-of-circuit cases dealing with other agencies. *See, e.g., United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *EEOC v. Packard Elec. Div.*, 569 F.2d 315 (5th Cir.1978). Because the argument was not timely raised, we decline to address it. *See Officers for Justice v. Civil Serv. Comm'n*, 979 F.2d 721, 726 (9th Cir.1992) (the Ninth Circuit "ordinarily [does not] consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief.") (quotations omitted).

338 U.S. 632, 642–43, 70 S.Ct. 357, 363–64, 94 L.Ed. 401 (1950). For an agency to subpoena corporate records, "[i]t is not necessary ... that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one. It is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command." *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 208–09, 66 S.Ct. 494, 505–06, 90 L.Ed. 614 (1946). *See also Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 508–09, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943) (reversing district court for having insisted that Secretary of Labor establish other elements of violation before issuing subpoena); *EPA v. Alyeska Pipeline Serv. Co.,* 836 F.2d 443, 447 (9th Cir.1988) ("An administrative agency, unlike parties relying on the judicial discovery process, need not first allege a violation of the law before it can investigate.")

Second, MSCC's argument misconstrues the OSH Act as a series of unconnected stars in space, in between which no standards govern and no investigation is proper. To the contrary, the Act consists of a general duty clause augmented in particular areas by specific regulations. The general duty clause provides "Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards...." 29 U.S.C. § 654(a)(1). "OSHA contemplates that the Secretary will promulgate specific safety standards to insure safe and healthful working conditions ... The general duty clause applies when there are no specific standards." *Donovan v. Royal Logging Co.,* 645 F.2d 822, 829 (9th Cir.1981) (citations omitted). OSHA's regulations may amplify and augment 29 U.S.C. § 654, but they do not displace OSHA's statutory obligation to continue to enforce the general duty clause as a minimum standard.

Consequently, the regulations also do not define the entire universe of OSHA's investigatory authority. To the contrary, OSHA is as entitled to conduct § 8(f) investigations of complaints alleging violations of the general duty clause as it is to investigate those alleging violation of any specific regulation. *See Reich v. Kelly–Springfield Tire Co.,* 13 F.3d 1160, 1166–67 (7th Cir.1994). In light of the structure of the OSH Act, we view the absence of specific regulations dealing with welding as of no special significance.

### 2.

However, MSCC has another arrow in its quiver. As MSCC sees it, the initial employee complaint mentions only two isolated problems:[6] no x-raying of welds, and failure to certify welders. MSCC presumes that these two precise circumstances are the only conditions OSHA was thereby authorized to investigate, and that any other investigation, even into the general adequacy of the welding, would constitute impermissible "bootstrapping" or "a fishing expedition." We·decline to read OSHA's authority in such a miserly fashion.

This circuit has twice previously addressed the appropriate scope of OSHA document requests in an § 8(f) investigation in response to a complaint. In each case, the court upheld the subpoena as appropriately narrow because the documents sought related to whether the employer was "furnishing to its employees ... a place of employment which [is] free from recognized hazards that are causing or likely to cause death or serious physical harm." *Hern Iron Works, Inc. v. Donovan,* 670 F.2d 838, 841 (9th Cir.1982); *accord Donovan v. Burlington Northern Inc.,* 694 F.2d 1213, 1216 (9th Cir.1982).[7] This is the language of 29 U.S.C. § 654(a)(1), the OSH Act's general duty clause. Thus, OSHA was not limited to seeking documents

---

6. As noted above, the complaint contained other allegations which OSHA declined to pursue.

7. These two cases also addressed the related question of how circumscribed a warrant-based physical inspection must be when the inspection is the result of a complaint. In each, the court concluded that OSHA could search an area broader than that complained about because it

was reasonable to believe it necessary to address the problem. *See Burlington Northern,* 694 F.2d at 1215–16; *Hern Iron Works,* 670 F.2d at 840–41. These portions of *Burlington* and *Hern* are therefore also consistent with our conclusion that OSHA's investigation is not a prisoner of the precise terms of the complaint filed.

about the precise complaint but was permitted to request documents which fell within its broader statutory enforcement obligations.

The governing statute and regulations compel the same conclusion. 29 U.S.C. § 657(f) authorizes investigation of the "violation *or danger*" stated by the complaint (emphasis added). Here, the danger involved was of a catastrophic release of hazardous chemicals due to improper welding. OSHA's inquiry into the adequacy of MSCC's welding was addressed to precisely this danger. Additionally, 29 C.F.R. § 1903.11(b), governing § 8(f) investigations, provides that "Inspections under this section shall not be limited to matters referred to in the complaint." Even if "inadequate welding" is not considered "referred to" in a complaint alleging two welding problems, § 1903.11(b) permits a broader investigation.

MSCC points us to an out-of-circuit EEOC case for the proposition that an agency must tailor its investigation to the precise charges before it. *See EEOC v. Packard Elec. Div.*, 569 F.2d 315 (5th Cir.1978). However, we do not find *Packard* to be relevant, because the EEOC's subpoena statute differs significantly from that of OSHA. The EEOC's authorizing statute specifically limits its subpoenas to the investigation of discrete charges. *See EPA v. Alyeska Pipeline Serv. Co.*, 836 F.2d 443, 447 (9th Cir.1988); *compare* 42 U.S.C. § 2000e–8(a) *with* 29 U.S.C. § 657(b).

In this case, OSHA received a complaint alleging two particular problems with MSCC's welding procedures. Under MSCC's construction of OSHA's authority, OSHA was then permitted only to investigate the two precise problems. It was not permitted to determine whether MSCC's welding procedures were in fact adequate; it was only permitted to determine whether, if they were inadequate, they were inadequate for either of the reasons specified in the complaint.

In our view, aside from being contradicted by the governing statute and regulations, that construction makes no sense. At bottom, OSHA's mission is the assurance of safety. If an employee points out a risk of catastrophic explosion, OSHA must be allowed the opportunity to ensure that such an event does not occur. If OSHA inspects pipe welding, then leaves, and the piping explodes the next day, it will be cold comfort to know that the explosion resulted from a welding problem OSHA wasn't permitted to look for. OSHA should be allowed to examine a problem area until it can be given a clean bill of health.

This is not a case in which OSHA, presented with a complaint about welding, attempted to conduct a wall-to-wall inspection; it is a case in which OSHA, presented with a complaint about welding, attempted to determine the adequacy of MSCC's welding procedures. If OSHA is to carry out its designated mission of assuring workplace safety, it must be allowed to do at least this much.

■ In short, we find nothing in OSHA's authorizing statute or regulations, or in our prior precedents, that would support MSCC's constrained view of OSHA's authority. OSHA is authorized by Congress to investigate any dangers alleged by employee complaints if it determines that cause exists. 29 U.S.C. § 657(f)(1). This power is not limited to complaints alleging violations of specific regulations, nor must OSHA cite specific regulations before it investigates. Here OSHA received a complaint alleging problems with MSCC's welding procedures, determined cause existed, and initiated an § 8(f) inquiry into the adequacy of MSCC's welding. This it was authorized to do.

B

MSCC contends further that the specific documents OSHA requested in its subpoena are not relevant to any authorized inquiry. Its primary argument in this regard is dependent on its argument regarding authority. MSCC assumes the only relevant inquiry is whether 1) MSCC did x-rays on its welds and 2) it certified its welders, and that therefore the only documents which could be relevant are those which indicate that 1) MSCC does not x-ray its welds, and 2) MSCC does certify its welders. Because we have rejected this conception of OSHA's authority, this argument fails.

We must still satisfy ourselves that OSHA's document requests meet the proper test for relevance. Without laying out a clear test, our prior cases have permitted requests which have a "bearing on" or "directly relate[ ]" to an employer's meeting of its general duty. *Hern Iron Works,* 670 F.2d at 841 ("bearing on"); *Burlington Northern,* 694 F.2d at 1216 ("directly related"). MSCC suggests that we should follow the Seventh Circuit, which has required OSHA to limit its requests to documents that bear some "clear relevance to the conditions about which complaints have been received." *Donovan v. Fall River Foundry Co.,* 712 F.2d 1103, 1111 (7th Cir.1983); *see also Marshall v. W & W Steel Co.,* 604 F.2d 1322, 1327 (10th Cir.1979) (upholding warrant requiring production of documents " 'directly related to the purpose of the inspection.' ").

We are of course fully aware that "[d]elineating the scope of a search with some care is particularly important where documents are involved." *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 324 n. 22, 98 S.Ct. 1816, 1827 n. 22, 56 L.Ed.2d 305 (1978). And while each of the above cases addressed a § 8(f) inspection of documents pursuant to a warrant, rather than the § 8(b) subpoena for documents which we face, we see no reason to apply different principles of relevance under one procedural mechanism or the other. On the other hand, OSHA should not be so narrowly trammeled that it cannot adequately assure no genuine safety risks exist.

With these considerations in mind, we hold that when seeking to enforce a § 8(b) subpoena, OSHA must show only that the documents it requests are relevant to the purpose of an authorized investigation. This standard is fully consistent with *Hern* and *Burlington Northern,* which allowed requests "bearing on" or "directly related" to OSHA's enforcement of the general duty clause. *Hern Iron Works,* 670 F.2d at 841; *Burlington Northern,* 694 F.2d at 1216. It is consistent as well with the more general standards reflected in cases like *Children's Hospital. Children's Hospital,* 719 F.2d at 1428 (generally, agency subpoena relevance test is whether "evidence is relevant and material to the [Congressionally-authorized] investigation.")

We do not believe the slightly narrower *Fall River Foundry* test to be warranted. A requirement of "clear relevance" to the "complaint" is neither explicit nor implicit in the statutory structure. We do not countenance "OSHA personnel's rummaging through the entire files of a company in order to determine what, if any, information pertinent to the employee complaints might be found." *Fall River Foundry Co.,* 712 F.2d at 1111. But the best way to avoid this problem is to enforce those restrictions which are imposed by the Fourth Amendment and 29 U.S.C. § 657.

For instance, authorized complaint-based investigations are those which relate to the "violation or danger" alleged. 29 U.S.C. § 657(f)(1). This restriction on authority also limits what will be relevant. Even within the realm of what is relevant, OSHA's requests will still have to meet the "reasonableness" and "minimum burden" standards imposed by the Fourth Amendment and 29 U.S.C. § 657(d). *See infra* § III. These restrictions adequately bar enforcement of overbroad "fishing trip" subpoenas. OSHA does not have an entirely free hand.

OSHA's request easily satisfies our relevance requirement. It seeks only documents relevant to MSCC's welding practices and the danger of toxic gas leaks. Items 1–3 in the subpoena would reflect any MSCC policies designed to ensure weld and vessel safety, as well as any MSCC knowledge of possible leak problems. Items 4–9 each relate to MSCC's welding practices and welder certification practices. Items 10–14 relate to design specifications and testing patterns for the pipes and vessels used to contain MSCC's chemicals; such information would indicate what sorts of pressures welds were under and how strong they needed to be. Items 15–17 would reflect any past accidents or repairs that might signify MSCC knowledge of a leak problem. Each is relevant to a thorough investigation of the safety of MSCC's chemical containment.

## C

MSCC does not contest that OSHA followed its own procedures for seeking a subpoena. Consequently, OSHA has satisfied the three prongs of the *Children's Hospital* test for enforcement.

## III

■ That is not the end of our inquiry, however. Even if these requirements are met, the Fourth Amendment offers additional protection to commercial privacy interests. *See New York v. Burger,* 482 U.S. 691, 699–700, 107 S.Ct. 2636, 2642–43, 96 L.Ed.2d 601 (1987). However, in the context of an administrative search, the Fourth Amendment's restrictions are limited:

> [I]t is sufficient [for Fourth Amendment purposes] if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. 'The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.'

*United States v. Morton Salt Co.,* 338 U.S. 632, 652–53, 70 S.Ct. 357, 368–69, 94 L.Ed. 401 (1950) (quoting *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946)); *see also Donovan v. Lone Steer, Inc.,* 464 U.S. 408, 415, 104 S.Ct. 769, 773, 78 L.Ed.2d 567 (1984) ("the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." (quoting *See v. City of Seattle,* 387 U.S. 541, 544, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967))). Thus, a subpoena will not be enforced if the party being investigated proves it is overbroad or unduly burdensome. *Children's Hospital,* 719 F.2d at 1428.

In addition to the Fourth Amendment, OSHA's subpoena power is limited by 29 U.S.C. § 657(d). That provision requires a "minimum burden" on employers and avoidance of "[u]nnecessary duplication":

> Any information obtained by the Secretary, the Secretary of Health and Human Services, or a State agency under this chapter shall be obtained with a minimum of burden upon employers, especially those operating small businesses. Unnecessary duplication of efforts in obtaining information shall be reduced to the maximum extent feasible.

29 U.S.C. § 657(d). MSCC has not demonstrated "unnecessary duplication," nor demonstrated undue burden. This standard does not limit OSHA investigations to the allegations of the complaint, which is the focus of MSCC's argument. We have no occasion to decide upon enforcement of a subpoena not barred by the Fourth Amendment, and relevant to a legitimate investigation, but unduly burdensome or unnecessarily duplicative under § 657(d).

■ In the magistrate's finding, adopted by the district court, the magistrate conceded that the request was "burdensome" but concluded that it was nevertheless necessary for a complete investigation into a potentially very hazardous workplace. Unquestionably, OSHA's request imposed a burden. We do not believe that it did so unreasonably. Given the potential risk involved, OSHA could not be expected to be satisfied with knowing that MSCC did not x-ray its welds. It was reasonable for it to inquire further into the types of tests done, the general schematics of MSCC's containment system, and MSCC's awareness of any past problems.

We also note with approval that the subpoena is highly specific in its description of the documents it seeks. Proper hazard investigation may necessarily entail more than examining a few welder certificates. To the extent that OSHA carefully tailors its document requests as to time, place, and subject matter, it satisfies its "minimum burden" obligation under § 657(d). Here, OSHA has carefully specified the precise time frames which are most relevant and the precise plant areas which are of central concern, thereby satisfying its statutory duties.

MSCC relies principally on the declaration of MSCC supervisor Ronald Benson to show the documents sought were superfluous in light of information gained from the on-site visit. However, the declaration establishes only that Benson was cooperative during OSHA's investigation with regard to x-rays and certification, the only two questions

MSCC considers relevant. It does not establish that OSHA received answers in sufficient detail to other relevant questions such that requesting further documents would be unreasonable. Consequently, OSHA's subpoena did not violate MSCC's Fourth Amendment rights.

IV

■ MSCC argues that OSHA's subpoena should have in any event been quashed as an abuse of process because OSHA initiated the subpoena to harass and punish MSCC. *See United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). We are not persuaded.

MSCC essentially relies on two pieces of circumstantial evidence to make its case: 1) OSHA declined to identify the regulations it was seeking to enforce, and 2) OSHA submitted a 17–category subpoena after MSCC refused to comply with a six category request. The first piece of evidence creates no particular inference; OSHA is entitled to investigate to enforce the general duty clause, without prior knowledge that any specific regulations are being violated. As for the revised documents list, according to OSHA's area director, the list resulted from 1) OSHA developing a more specific list after consulting with an expert, and 2) OSHA including more documents it would eventually require to avoid the need for multiple subpoenas. The magistrate found the director's explanations credible, and MSCC has offered no evidence that they were not. Indeed, a cursory review of the two requests demonstrates the first stated reason; the subpoena's requests are far more specific and narrowly drawn. We agree with the district court's conclusion that MSCC has shown no abuse of process.

MSCC asks for more lenient treatment because it was unable to conduct discovery prior to the holding of an evidentiary hearing on OSHA's subpoena. However, "district courts must be cautious in granting such discovery rights, lest they transform subpoena enforcement proceedings into exhaustive inquisitions into the practices of regulatory agencies." *SEC v. Dresser Indus.,* 628 F.2d 1368, 1388 (D.C.Cir.1980); *accord In re Office of Inspector General,* 933 F.2d 276, 278 (5th Cir.1991). "A limited amount of discovery may be allowed if, for example, 'the defendant 'makes a preliminary and substantial demonstration of abuse,' that is, where the defendant has presented 'meaningful evidence' that the agency is attempting to abuse its investigative authority. Anything short of this showing is not enough.' " *Id.* (quoting *In re EEOC,* 709 F.2d 392, 400 (5th Cir. 1983)). As it was, MSCC received an evidentiary hearing, even though it could not make a "substantial preliminary demonstration." That hearing was more than MSCC was entitled to. We see no reason to measure MSCC's showing by a lower standard.[8]

V

We find the documents OSHA sought to have been relevant to a statutorily authorized purpose and defined with sufficient specificity to satisfy Fourth Amendment and statutory requirements. We find no evidence of improper motive behind OSHA's request for a subpoena. Accordingly, we affirm the district court's order of enforcement.

AFFIRMED.

---

8. Both parties have briefed the adequacy of OSHA's ability to preserve inviolate any trade secrets MSCC may be forced to disclose, but we need not address this issue. MSCC's only actual contention is that OSHA failed to establish the need for the proprietary documents requested. As discussed in § II, *supra,* the test is not of necessity but authority and relevance, and OSHA has established both of these.