**ROCKFORD DROP FORGE COMPANY, Plaintiff-Appellee,**

v.

**Raymond J. DONOVAN, Secretary of Labor, Defendant-Appellant.**

No. 81–1763.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 1981.

Decided March 12, 1982.

Thomas L. Holzman, U. S. Dept. of Labor, Washington, D.C., for defendant-appellant.

Michael K. Havrilesko, Williams, McCarthy, Kinley, Rudy & Picha, Rockford, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and GRANT,* Senior District Judge.

CUMMINGS, Chief Judge.

On October 22, 1980, a compliance officer of the Occupational Safety and Health Administration (OSHA) of the Department of Labor applied for a warrant to inspect portions of the premises of Rockford Drop Forge Company (Rockford) in Rockford, Il-

* The Honorable Robert A. Grant, Senior District Judge of the Northern District of Indiana, is sitting by designation.

linois. Magistrate Mahoney issued an *ex parte* inspection warrant on the same day. Five days thereafter Rockford filed a complaint for declaratory and injunctive relief in the district court. The complaint contended that the warrant violated Rockford's rights under the Fourth Amendment, was issued without sufficient probable cause, and was issued *ex parte* even though Rockford had asked defendant Secretary of Labor and various OSHA officials and employees, also defendants, to give Rockford advance notice of an application for an inspection warrant.

Rockford's complaint before the district court alleged two causes of action. The first stated that OSHA has no power to obtain *ex parte* warrants under the following circumstances: Defendant Ronald Stephens, an OSHA compliance officer, appeared at Rockford's premises on September 9, 1980, pursuant to an August 29, 1980, complaint filed with OSHA by Marvin O. Thompson for the Blacksmiths and Boilermakers Local Lodge No. 1614 (Union). Stephens was refused admission to Rockford's premises because he had no search warrant to conduct a safety and health investigation of Rockford. On the same day and again two days thereafter, Rockford requested Harold Gier, an OSHA safety supervisor, to give Rockford notice should it apply for an inspection warrant.

The complaint then alleged that on October 22, 1980—without notice to Rockford—Stephens applied to the magistrate for an inspection warrant based upon the August 29 complaint, another Union complaint dated September 11, 1980, and a summary of visual observations made by Union members on October 7, 1980. Magistrate Mahoney issued the *ex parte* inspection warrant on the same day. On the following day, Stephens and defendant Gregory Mitchell, OSHA Area Director, presented Rockford with the inspection warrant and a copy of the September 11 complaint. Rockford objected to the warrant and search for the

following reasons: "invalidity of the warrant, *ex parte* issuance, failure to comply with the standards established by *Barlow [Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305], overbroad and improper scope, and no probable cause shown." Over protest, Rockford permitted a partial inspection on that day only.

In the second cause of action Rockford claimed that the inspection warrant was "not supported by a written complaint from an employee" because the Union allegedly did not represent Rockford employees. The Union had been on strike since July 23, 1979. Rockford also alleged that the Union's complaint referred to "item # 15 which is not contained in the complaint."[1] Therefore, the inspection warrant assertedly was "improper, unlawful, and violate[d] the Fourth Amendment of the United States Constitution as it was issued without sufficient probable cause, as required by *Marshall v. Barlow[']s, Inc.*" (App.A.36).

Rockford requested a declaratory judgment that the application for the warrant and the inspection warrant were unconstitutional under the Fourth Amendment and that the inspection itself also violated Rockford's Fourth Amendment rights. In addition to asking the district court to quash the search warrant, Rockford requested suppression of any evidence obtained from the partial inspection and an injunction against further action by OSHA.

In March 1981, Judge Roszkowski granted Rockford's motion to quash the inspection warrant and to suppress the evidence obtained thereunder. In his accompanying opinion, the district judge invalidated the warrant because it was issued *ex parte* notwithstanding Rockford's request to be present at the hearing on the application for the warrant. The court rejected Rockford's position that the Union was an improper complainant because it did not represent any employee currently working for Rockford. Following our decision in *Burkart Randall Division of Textron, Inc. v.*

---

1. A perusal of the Union's complaint (App.A. 17–A.20) shows that due to a typographical error, # 15 should have been # 13. The latter alleges employee exposure to electrical shock from damaged electrical cords to a fan in the forge shop (App.A.18–A.19).

*Marshall*, 625 F.2d 1313 (7th Cir. 1980), the court below held that even if the Union were not a proper complainant under Section 8(f)(1) of the Occupational Safety and Health Act (29 U.S.C. § 657(f)(1)),[2] its complaint could properly form the basis for an OSHA inspection. Judge Roszkowski also found that the information in the application for the inspection warrant established probable cause and that the magistrate had sufficient factual data to issue the warrant.[3]

We hold that the *ex parte* OSHA inspection warrant was valid and therefore reverse.

*OSHA Was Empowered to Obtain This Inspection Warrant Ex Parte.*

■ Although an OSHA inspection was permitted to take place over Rockford's objection on October 23, 1980, this case is not moot because on the following day plaintiff terminated any further attempts to inspect its facilities. The case is also not moot because the district court granted Rockford's motion to suppress evidence obtained under the inspection warrant. Therefore we must decide the merits of plaintiff's principal argument that the inspection warrant was properly quashed on the ground that it issued *ex parte.* The question of OSHA power in this case should not recur regarding *ex parte* warrants obtained after November 3, 1980, in light of subsequent amendments to OSHA regulations. See 45 Fed.Reg. 65916 (Oct. 3, 1980).

First of all, we note that the purpose of the Occupational Safety and Health Act is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." Section 2(b), 29 U.S.C. § 651(b). Consequently the defendant Secretary was authorized by Congress "to enter without delay and at reasonable times" any place of employment and "to inspect and investigate during working hours and at other reasonable times * * *." Section 8(a) of the Act, 29 U.S.C. § 657(a). In addition, Section 8(g)(2) of the Act directs the Secretary to prescribe "rules and regulations dealing with the inspection of an employer's establishment." 29 U.S.C. § 657(g)(2). In 1971, the Secretary promulgated 29 C.F.R. § 1903.4 which permits appropriate officials to "promptly take appropriate action, including compulsory process, if necessary," upon an employer's refusal to permit entry by OSHA.

2. Section 8(f)(1) provides:

Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice, and shall be signed by the employees or representative of employees, and a copy shall be provided the employer or his agent no later than at the time of inspection, except that, upon the request of the person giving such notice, his name and the names of individual employees referred to therein shall not appear in such copy or on any record published, released, or made available pursuant to subsection (g) of this section. If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists. If the Secretary determines there are no reasonable grounds to believe that a violation or danger

exists he shall notify the employees or representative of the employees in writing of such determination.

3. In response to Rockford's argument that the warrant was overbroad, the Secretary advised the district court that he interpreted the warrant to authorize only an inspection of the complaint areas, but the court suggested without deciding that any future warrant application should identify the areas and documents to be inspected. The court also refused to decide whether OSHA is authorized to take samples by attaching personal monitoring devices to employees. We invalidated such sampling in *Matter of Metro-East Mfg. Co.*, 655 F.2d 805 (7th Cir. 1981), but the OSHA regulations governing investigative techniques have since been amended in an attempt to meet this Court's objections. 47 Fed.Reg. 6530 (Feb. 12, 1982). Since the validity of the regulations under the Administrative Procedure Act (5 U.S.C. §§ 551 *et seq.*) has not yet been determined, we are adhering to the Secretary's admonition to strike the warrant language permitting the attachment of samplers (Secretary's Reply Br. 17 n.10).

Warrantless inspections conducted under these provisions were invalidated by the Supreme Court in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305. But at the same time, the Court stated that its holding would not deprive the Secretary of the advantages of surprise "if, after being refused entry, procedures were available for the Secretary to seek an *ex parte* warrant and to reappear at the premises without further notice to the establishment being inspected." 436 U.S. at 320, 98 S.Ct. at 1824. In a footnote, the *Barlow's* opinion stated that "a regulation expressly providing that the Secretary could proceed *ex parte* to seek a warrant or its equivalent, would appear to be as much within the Secretary's power as the regulation currently in force and calling for 'compulsory process.' " *Ibid.* n.15. The Court's endorsement of such procedures of course meant that they passed the reasonableness requirement of the Fourth Amendment.

*Barlow's* was decided in May 1978 and in December of that year the Secretary took advantage of the Supreme Court's suggestion and amended 29 C.F.R. § 1903.4 by defining "compulsory process" to mean "the institution of any appropriate action, including *ex parte* application for an inspection warrant or its equivalent." 29 C.F.R. § 1903.4(d). As the Secretary explained, the agency considered it already had power to obtain *ex parte* warrants under the prior unamended regulation because it allowed use of "compulsory process." The amendment was made only "to make explicit that the Secretary is authorized to obtain *ex parte* warrants or their equivalent." 43 Fed.Reg. 59839.

■ The foregoing history shows that the statute and regulations permitted the Secretary to seek inspection warrants *ex parte* and that the procedure employed here was approved in advance by the Supreme Court's opinion in *Barlow's*. Since the present warrant was issued on October 22, 1980, the 1978 version of Section 1903.4 applies.

■ Rockford, however, asserts that the 1978 amendment to the regulation was in-

valid because the Secretary did not follow the rule-making procedures required by Section 4(b) of the Administrative Procedure Act (5 U.S.C. § 553(b)). While there is some authority for this position, *Donovan v. Huffhines Steel Co.*, 645 F.2d 288 (5th Cir. 1981) (affirming without opinion 488 F.Supp. 995, 997–1001 (N.D.Tex.1979)); *Cerro Metal Products v. Marshall*, 620 F.2d 964, 975–982 (3d Cir. 1980), we agree instead with the majority of federal appeals courts that the 1978 amendment of 29 C.F.R. § 1903.4 was only an interpretation of the prior version and therefore exempt from rule-making procedures by Section 4(b)(A) of the Administrative Procedure Act (5 U.S.C. § 553(b)(A)). *Stoddard Lumber Co., Inc. v. Marshall*, 627 F.2d 984, 989–990 (9th Cir. 1980); *Marshall v. W & W Steel Co., Inc.*, 604 F.2d 1322, 1325–1326 (10th Cir. 1979); *Marshall v. Seaward International, Inc.*, 644 F.2d 880 (4th Cir. 1981) (unpublished); *Donovan v. Huffhines Steel Co.*, 645 F.2d 288, 289–291 (5th Cir. 1981) (Rubin, J., concurring); *Cerro Metal Products v. Marshall*, 620 F.2d 964, 983–985 (3d Cir. 1980) (Seitz, C. J., dissenting). See also *Matter of Chicago Aluminum Castings Co.*, F.Supp. (N.D.Ill.1981). The latter cases adequately explain the issue and we do not repeat their arguments here.

■ Rockford also contends that the warrant is invalid because it had requested OSHA to give advance notice of an application for an inspection warrant. This contention is without merit because the Supreme Court had stated in *Marshall v. Barlow's, Inc., supra*, 436 U.S. at 316, 319–320, 98 S.Ct. at 1822, 1823–1824, that advance notice is not required and the 1972 OSHA Compliance Operations Manual and ensuing OSHA Fields Operations Manuals further alerted employers to the possibility of surprise inspections. Indeed, under Section 2(b)(10) of the Act (29 U.S.C. § 651(b)(10)), OSHA's enforcement program must "include a prohibition against giving advance notice of any inspections and sanctions for any individual violating this prohibition." The reason for prohibiting advance notice is of course to avoid delay and to inject sur-

prise so that OSHA employees could inspect plants before deleterious conditions could be concealed. Advance notice is unnecessary to protect an employer because he may still move before the district court to quash a warrant prior to its execution or refuse entry pursuant to the warrant and then challenge the warrant before the district court when the Secretary brings civil contempt proceedings. The employer may also preserve his rights through the administrative hearing stage and challenge the final OSHA order in the enforcement proceedings before the Court of Appeals. *Matter of Worksite Inspection of S. D. Warren*, 481 F.Supp. 491, 495 (D.Me.1979). As Judge Gignoux pointed out in that case,

> Obviously, to permit an employer [through the giving of notice] to appear before the magistrate and contest the issuance of an inspection warrant would conflict with the explicit congressional policy that OSHA inspections be undelayed and without notice. In addition, the Court agrees with the Secretary that an adversary proceeding, such as is sought by Warren in this case, could only result in an unreasonable and unnecessary burden on the Secretary. The inevitable effect would be to "undermine the efficient and speedy implementation of the Act" contemplated by Congress * * * and to require an unwarranted "consumption of enforcement energies" that would "exceed manageable proportions." (Citations omitted.)

*This Warrant Did Not Lack Probable Cause.*

■ Plaintiff also argues that there was no probable cause for the issuance of this warrant. This argument was rejected out of hand by the district judge. His decision was clearly correct in view of the allegations of the complaints to the Secretary by the Union's representative attached as exhibits to the sworn warrant application. The September 11, 1980, complaint alleged 14 unsafe conditions in violation of OSHA regulations (App.A.17–A.19). On October 8, 1980, this was modified to 8 dangerous conditions (App.A.20–A.24). These allega-

tions were set forth carefully in the application and plainly furnished "sufficient detail to evaluate OSHA's decision to conduct an inspection based on these complaints." *Burkart Randall Division of Textron, Inc. v. Marshall, supra*, 625 F.2d at 1320. Since the warrant was confined to the 8 observed hazardous conditions (App.A.26–A.27), it was plainly supported by probable cause.

*The Warrant Was Not Overbroad in Scope.*

■ Judge Roszkowski also rejected Rockford's assertion that this warrant was overbroad in scope because the Secretary "indicated that he interprets the warrant to authorize only an inspection of the complaint areas" (App.A.50). See note 3 *supra*. The warrant itself is limited to the forge building, the forge shop, the trim room, "and those areas in plain view in which the compliance officer observes hazardous conditions * * * and all other things relating to these [hazardous] conditions and [aforesaid] areas * * * bearing on whether this * * * place of employment [is] free from recognized hazards that are causing or likely to cause death or serious physical injuries to its employees * * *." Because of these limitations, we may accept without question OSHA's statement that the "Secretary does not intend to execute the warrant except as to the complaint and plain view areas" (Reply Brief 16), but to avoid further disputes we will limit the warrant's scope to those areas.

*It Is Immaterial That the Complaints to OSHA Came From Striking Employees.*

■ Rockford's final argument is that because the Union was on strike, the three employee members mentioned in the warrant application were not employees or representatives of Rockford's current employees and therefore not proper complainants under Section 8(f)(1) of the Act, 29 U.S.C. § 657(f)(1) (*supra* n.2). We rejected a similar argument in *Burkart Randall Division of Textron, Inc. v. Marshall, supra*, 625 F.2d at 1322, and accordingly agree with the district court that striking employees or their representatives can be proper com-

plainants for Section 8(f)(1) purposes.[4] Surely employees like these should not be disenfranchised from preserving the safety of the workplace where they hope to return.

For the foregoing reasons the judgment of the district court is reversed, but the geographic scope of the warrant is limited "to the complaint and plain view areas," and the phrase "which may be done by attaching personal monitoring devices to employees" is stricken from lines 5 and 6 on page 2 of the warrant. We do not decide whether OSHA may attach personal monitoring devices to employees under its new regulations.

---

4. Striking employees are considered "employees" under the National Labor Relations Act (*Mastro Plastics Corp. v. National Labor Relations Board*, 350 U.S. 270, 284–287, 76 S.Ct. 349, 358–360, 100 L.Ed. 309) and should be considered "employees" or "employee representatives" under OSHA Section 8(f)(1) in consideration of the beneficent purposes of the Act. If the Union members here made false complaints to OSHA to harass Rockford, they are subject to the criminal penalties of 29 U.S.C. § 666(g), which were set out just above the signature line on the Section 8(f)(1) complaint forms that initiated this attempted inspection (App.A.18, A.20).