In the Matter of ESTABLISHMENT INSPECTION OF SKIL CORPORATION.

Appeal of SKIL CORPORATION.

No. 88–1146.

United States Court of Appeals, Seventh Circuit.

Argued March 15, 1988.

Decided May 13, 1988.

William T. Cahill, Phelan, Pope & John, Ltd., Chicago, Ill., for appellant.

Don O. Burley, Daniel G. Jarcho, Lawrence G. McDade, Office of Consumer Litigation, U.S. Dept. of Justice, Washington, D.C., for appellee.

Before POSNER, FLAUM, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

The Consumer Product Safety Commission obtained from a federal magistrate a warrant to inspect documents at premises of Skil Corporation. The magistrate refused to quash the warrant. 119 F.R.D. 658 (N.D.Ill.1987). The district court affirmed this refusal and ordered Skil either to permit the warrant to be executed or to pay a civil contempt penalty. Skil submitted, but appeals. The appeal raises a mare's nest of jurisdictional, procedural, and substantive questions.

The Commission has for years been trying to determine whether the lower blade guard of circular saws manufactured by Skil is defective and, as a result, hazardous to consumers; if so, the Commission could require Skil to give public notice of the hazard, repair the saw or replace it with a nondefective model, or refund the purchase price to consumers. See 15 U.S.C. §§ 2064(a)(2), (c), (d). In June 1986 the Commission, having learned of two injuries to users of a Skil circular saw, conducted with Skil's consent a limited inspection of Skil's premises. Later the Commission learned of sixteen additional injuries, two fatal, and this prompted it to conduct a follow-up inspection in September, but this time Skil refused to consent. The Commission then obtained the warrant in issue, which authorizes it to inspect all of Skil's records (including consumer claims and complaints, test reports, and investigative reports) relating to incidents involving Skil circular saws in which the lower blade guard may have failed to shield the blade properly, and all engineering records for circular saws with a lower blade guard. The warrant entitles Skil to withdraw from inspection any documents for which it claims attorney-client privilege or work-product privilege, provided that it gives the Commission a list of these documents.

The statutory basis for the warrant is the second sentence of section 16(b) of the Consumer Product Safety Act, 15 U.S.C. § 2065(b). The section reads in its entirety:

> Every person who is a manufacturer, private labeler, or distributor of a consumer product shall establish and maintain such records, make such reports, and provide such information as the Commission may, by rule, reasonably require for the purposes of implementing this [Act], or to determine compliance with rules or orders prescribed under this [Act]. Upon request of an officer or employee duly designated by the Commission, every such manufacturer, private labeler, or distributor shall permit the inspection of appropriate books, records, and papers relevant to determining whether such manufacturer, private labeler, or distributor has acted or is acting in compliance with this [Act] and rules under this [Act].

A regulation promulgated by the Commission provides that "If upon being presented with a notice by an officer or employee duly designated by the Commission, the person or agent-in-charge of the firm being inspected refuses to allow entry or inspection," as Skil had done, "the Commission may then seek a search warrant or take other appropriate legal action." 16 C.F.R. § 1118.2(d).

The magistrate issued the warrant on November 14, 1986. Three days later the Commission's inspectors tried to execute it, but they were refused admission to Skil's premises. The Commission asked the magistrate to certify to the district judge facts demonstrating a civil contempt, see 28 U.S.C. § 636(e), while Skil for its part asked the magistrate to quash the warrant. Inexplicable delay (particularly inexplicable in a

matter involving safety) ensued; finally, in August 1987, the magistrate denied the motion to quash the warrant, after modifying the warrant in two minor respects, and certified Skil's contempt to the district judge, who after more delay upheld the magistrate's order in January 1988 and directed Skil either to allow the inspection or to pay $500 a day to the government for every day it refused. After the district judge refused to stay his order pending appeal, Skil allowed the inspection. We also denied a stay, and the inspection began and is continuing intermittently.

Skil told us at argument that the inspection disrupts its business, because the Commission's inspectors insist on searching through Skil's files *in situ* rather than allowing them to be brought to a conference room on the premises for inspection. The Commission told us that, on the contrary, it is Skil that insists on the inspectors' traipsing about from filing cabinet to filing cabinet. We have no ready method for resolving this factual dispute, nor do we think it important for us to do so.

The first question is our appellate jurisdiction. The fact that the order was entered in a proceeding for civil contempt does not determine its appealability, since "an order of civil contempt is appealable if and only if it is either final for purposes of section 1291 or appealable under a statute allowing the appeal of interlocutory orders." *Szabo v. U.S. Marine Corp.*, 819 F.2d 714, 716 (7th Cir.1987). The order in issue is basically a discovery order, which normally would not be appealable unless the person against whom it ran cared enough to disobey the order and incur a contempt sanction, see, e.g., *Cobbledick v. United States*, 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940); *Illinois v. F.E. Moran, Inc.*, 740 F.2d 533, 536 (7th Cir.1984)—which Skil does not. But discovery orders issued in the course of an ongoing lawsuit are unappealable because interlocutory, and the district judge's order upholding the inspection warrant and ordering Skil to comply (or else) is not interlocutory, at least in the usual sense of an order issued before the end of the lawsuit. It is the last order contemplated in the district court proceeding, and no other proceeding is pending either in a court or before the Consumer Product Safety Commission.

■ The last order in a proceeding is a final decision appealable under 28 U.S.C. § 1291. It is appealable even if it is ancillary to a proceeding in another forum—even if it kicks off the proceeding in the other forum. *Ellis v. ICC*, 237 U.S. 434, 442, 35 S.Ct. 645, 646, 59 L.Ed. 1036 (1915). For example, if a party to an arbitration agreement brings an action in federal district court under the federal arbitration code, and the only relief he seeks is an order directing the other party to arbitrate their dispute, and the district court issues the order, it is a final, appealable judgment. *University Life Ins. Co. v. Unimarc Ltd.*, 699 F.2d 846, 848 (7th Cir.1983); *Graphic Communications Union v. Chicago Tribune Co.*, 779 F.2d 13 (7th Cir.1985); *In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 784 F.2d 831, 833 (7th Cir.1986); *County of Durham v. Richards & Associates, Inc.*, 742 F.2d 811, 813 (4th Cir.1984). Yet it does not resolve the dispute; it merely channels it into another forum for resolution—the arbitration tribunal selected in accordance with the parties' agreement. Other examples include orders to disclose grand jury testimony and orders dismissing cases because the forum is inconvenient (in the expectation that the case will be refiled in the convenient forum). See *In re Petition of Moore*, 776 F.2d 136, 138–39 (7th Cir.1985). Another example is an order of abstention pursuant to *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Whether or not it results in dismissal of the plaintiff's federal case, such an order does not resolve the parties' dispute but merely requires the plaintiff to commence proceedings in state court. Yet certainly when it involves an outright dismissal of the federal action and (in most circuits) even when it merely stays the federal court action, the order of abstention is appealable. *Mazanec v. North Judson–San Pierre School Corp.*, 750 F.2d 625 (7th Cir.1984). "The fact that the mat-

ter is being pursued before another tribunal is irrelevant." *Id.* at 627.

The inspection warrant issued in this case is a part of the Commission's investigation, and the investigation may eventually blossom into a formal administrative proceeding against Skil. But the proceeding in the district court is purely ancillary to the Commission's investigation, and the district court's order is the last act in that ancillary proceeding. A similar order was held appealable on this ground in *Babcock & Wilcox Co. v. Marshall,* 610 F.2d 1128, 1133 (3d Cir.1979). The Commission argues, however, that since it is almost certain to be back before the magistrate at some subsequent stage of its investigation, appeal should be deferred to the end. But when will that be? The Commission seems really to be arguing that the results of the current inspection may lead it to seek additional inspection warrants; the breadth of the warrant makes the argument speculative, and the warrant questionable, as we shall see.

█ But if Skil continues to be obdurate, or raises unreasonable claims of privilege, the Commission may seek supplementary relief. And if, as Skil argues, the Commission is being unduly disruptive in its manner of conducting the inspection, Skil can go back to the magistrate and ask for an appropriate modification of the warrant (Skil pretends to us that it can't do this, that the magistrate has somehow lost jurisdiction of the matter, but that is nonsense); or it can ask the district judge to modify *his* order. Although retention of jurisdiction to mete out supplementary relief if the court's order is not obeyed or has to be modified because of changed circumstances does not destroy finality, *University Life Ins. Co. v. Unimarc Ltd., supra,* 699 F.2d at 849–50, the existence of unresolved questions of privilege that are integral to the scope of the Commission's entitlement to inspect is not easily characterized in those terms.

We are given additional pause by the sheer strangeness of regarding a search warrant as an appealable order. Ordinarily a search warrant is executed on the spot—precluding appeal—and the method for getting the lawfulness of the search litigated in an appellate court is to move for the return or suppression of the fruits of the search, and to appeal from the denial of the motion. Here execution was forestalled and the proceeding on the warrant turned into a contempt proceeding that led to an order directing Skil to accede to the search on pain of a heavy fine if it did not.

█ The very unconventionality of the path by which the warrant comes to our court suggests, however, the possibility that the order we are being asked to review is actually an injunction, in which event the order is appealable without regard to finality. See 28 U.S.C. § 1292(a)(1). True, if the order merely has the practical effect of an injunction it is appealable only if an immediate appeal is necessary to prevent irreparable harm. See *Stringfellow v. Concerned Neighbors in Action,* —— U.S. ——, 107 S.Ct. 1177, 1183–84, 94 L.Ed.2d 389 (1987), and cases cited there; *Donovan v. Robbins,* 752 F.2d 1170, 1172–74 (7th Cir. 1984). But we conclude that the present order *is* an injunction. As this characterization is related to the question of the Commission's authority to proceed by search warrant, we turn now to that question.

The Consumer Product Safety Act nowhere explicitly authorizes search warrants, and maybe we should not infer an implicit authorization. Cf. *Midwest Growers Coop. Corp. v. Kirkemo,* 533 F.2d 455, 462–63 (9th Cir.1976); *In re Kulp Foundry, Inc.,* 691 F.2d 1125, 1131–32 (3d Cir. 1982); but see *State Fair of Texas v. U.S. Consumer Product Safety Commission,* 481 F.Supp. 1070, 1073–74 (N.D.Tex.1979), aff'd, 650 F.2d 1324 (5th Cir.), vacated as moot, 454 U.S. 1026, 102 S.Ct. 560, 561, 70 L.Ed.2d 470 (1981). The Commission has an awesome jurisdiction, encompassing almost the entire consumer manufacturing and distributing sector of the economy. See 15 U.S.C. § 2052(a). Search warrants, as normally understood, are ex parte orders that authorize government agents to enter private property forcibly and cart off the papers, effects, or other personal prop-

erty specified in the warrant. The warrant in this case does not authorize the removal of documents, yet is intrusive enough to make us wonder whether we should infer from Congress's silence that the Consumer Product Safety Commission is authorized to seek warrants to search through the files of every consumer product manufacturer and distributor in the United States that the Commission has reason to believe may be manufacturing or distributing an unsafe product. The Senate bill would have given the Commission authority to seek inspection warrants, but this provision of the bill was dropped in conference, see H.R.Conf.Rep. No. 1593, 92d Cong., 2d Sess. 54 (1972), U.S.Code Cong. & Admin. News 1972, p. 4573, and this history may make Congress's silence pregnant with a different significance from the one the Commission ascribes to it.

In *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 316–24, 98 S.Ct. 1816, 1822–26, 56 L.Ed.2d 305 (1978), the Supreme Court, in the course of holding that the Occupational Safety and Health Administration lacked power to conduct searches of employers' premises without warrants, made clear that OSHA could proceed by means of inspection warrants. Although the Consumer Product Safety Commission in this case was following the procedure limned by the Court in *Barlow's*, there are differences between the two regulatory schemes. First, the warrant in that case had been issued under a provision of the Occupational Safety and Health Act that empowers OSHA to enter employers' premises—and to do so, moreover, "without delay." 29 U.S.C. § 657(a)(1). The warrant here was issued under a provision of the Consumer Product Safety Act that speaks of inspection but not entry. Section 16(b), 15 U.S.C. § 2065(b); cf. *Outboard Marine Corp. v. Thomas*, 773 F.2d 883, 888–90 (7th Cir. 1985), vacated for reconsideration in light of subsequently enacted statute, — U.S. ——, 107 S.Ct. 638, 93 L.Ed.2d 695 (1986). This may not be a big difference, though. Section 16(a) of the Consumer Product Safety Act allows both entry and inspection, and maybe entry in (a) should be hitched to inspections in (b).

A second difference is that *Barlow's* had raised a question whether OSHA was authorized by its existing regulation to obtain search warrants ex parte; see discussion in *Donovan v. Red Star Marine Services, Inc.*, 739 F.2d 774, 780–83 (2d Cir.1984). That question was eliminated by a subsequent amendment to the regulation. See *id.* at 781–83; *Rockford Drop Forge Co. v. Donovan*, 672 F.2d 626 (7th Cir.1982). The corresponding regulation of the Consumer Product Safety Commission (quoted earlier) does not refer to ex parte warrants. But this may be a small point, too. The regulation mentions "search warrants" (whereas the old OSHA regulation had just said "compulsory process"), and normally they are ex parte. Also, as noted in *Rockford*, a requirement of notice to the owner of the premises to be searched would both cause delay and give the owner a chance to conceal incriminating conditions or documents. See *id.* at 630–31. Yet we went on to state that the owner of the premises "may still move before the district court to quash a warrant prior to its execution or refuse entry pursuant to the warrant and then challenge the warrant before the district court when the Secretary [of Labor] brings civil contempt proceedings." *Id.* at 631. The difference between notice and an opportunity to be heard before the warrant is issued and notice and an opportunity to be heard before it is executed is small, and makes both the costs and benefits of an "ex parte" warrant slight. Indeed, the term seems misapplied.

Third and most important, section 19(a)(3) of the Consumer Product Safety Act, 15 U.S.C. § 2068(a)(3)—a provision without counterpart in OSHA's statute—makes it a prohibited act to "fail or refuse to permit access to or copying of records" that the Commission is entitled by section 16(b) to inspect. And section 22(a)(1), 15 U.S.C. § 2071(a)(1), which again has no counterpart in the OSHA statute, authorizes the federal district courts to restrain any prohibited act. When Skil refused to allow the Commission access to records that the Commission claimed to be entitled to inspect, the Commission could and did go

into federal district court for an order restraining Skil, under penalty of contempt, from continuing to block the Commission's access. This option should have allayed the concern expressed by the district judge in the *State Fair* case that without an implied power to issue warrants the Commission would be helpless: unable to enter without a warrant, because of *Barlow's*, and unable to enter with one, for want of statutory authorization to seek a warrant. (Still another possibility, which we need not consider, is that a federal district court might have inherent power to issue a warrant ancillary to an administrative investigation. Cf. *United States v. Torres*, 751 F.2d 875, 878–80 (7th Cir.1984).) We reject the argument that if searches without warrants are impermissible, the refusal to permit the Commission's inspectors to enter the premises to inspect documents could not be a prohibited—that is, a wrongful—act and therefore could not be enjoined. It is one thing to say that the Commission's inspectors cannot just barge in and another to say that if they give the owner a good reason for wanting to enter and inspect his premises or records at a mutually convenient time, the owner has *carte blanche* to refuse; if he did, the statutory power of the Commission to inspect documents would be nullified.

We have been assuming a sharp disjunction between an injunction and a warrant. This would be proper if we were speaking of an honest-to-goodness criminal search warrant, but if the warrant in this case had been such the Commission would not have dithered for a year while Skil refused to allow the inspection; it would have gotten hold of a sledgehammer (a nondefective one, we trust) and broken down Skil's door. The Commission has never suggested that it could or would proceed in such a fashion. Although moviegoers who remember the environmental police in the movie *Ghostbusters* will be surprised, the practice of allowing the target of an administrative warrant to forbid entry and thereby convert the warrant proceeding into a contempt proceeding is the standard method of enforcing such warrants. Besides our *Rockford* opinion, cited earlier, which as-

sumes this to be the proper practice, see *Donovan v. Burlington Northern, Inc.*, 781 F.2d 680 (9th Cir.1986); *Donovan v. Hackney, Inc.*, 769 F.2d 650 (10th Cir. 1985); Whitebread, Criminal Procedure: An Analysis of Constitutional Cases and Concepts § 5.06 at p. 126 (1980). Even the compliance investigators of the Drug Enforcement Agency are unarmed when executing administrative search warrants, see *United States v. Nechy*, 827 F.2d 1161, 1164 (7th Cir.1987), though we need not speculate on the right of an agency to execute an administrative warrant summarily in an emergency.

When an administrative warrant is treated in the standard fashion just outlined, the difference between it and an injunction forbidding interference with entry is very slight; perhaps there is no difference. Since the injunctive power of the Consumer Product Safety Commission is explicit, since the appealability of injunctions is unquestionable, and since both the Commission's authority to issue a warrant (especially an ex parte warrant) and the appealability of the warrant are murky, we prefer to characterize the order here as an injunction, and to leave for another day the questions that may arise in a case in which an administrative warrant, judicially enforced at the Commission's request, cannot be so characterized.

The injunction authorizes the Commission to enter and search private property without the owner's consent. The private property in question is neither subject to comprehensive regulation entailing the surrender of the owner's interest in privacy and repose, see, e.g., *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), nor itself a product of regulation, as a required record would be, see *McLaughlin v. A.B. Chance Co.*, 842 F.2d 724 (4th Cir.1988); but see *Brock v. Emerson Electric Co.*, 834 F.2d 994 (11th Cir.1987). Therefore one might expect the Fourth Amendment to be in play, and to place limitations of probable cause and particular description on the injunctive proceeding and any orders that issue from it. The few cases on the issue mainly lean

against the contention, see *ICC v. Gould,* 629 F.2d 847, 861 n. 26 (3d Cir.1980); *Cooper's Express, Inc. v. ICC,* 330 F.2d 338, 340 (1st Cir.1964); *United States v. New Orleans Public Service, Inc.,* 480 F.Supp. 705, 708–15 (E.D.La.1979), but *New Orleans Public Service* was reversed by a decision that appears to hold (though with no discussion of the specific issue) that an injunction must comply with the Fourth Amendment, see *United States v. Mississippi Power & Light Co.,* 638 F.2d 899, 907 (5th Cir.1981).

There is a reason for the dearth of authority. An injunction will not be issued unless the court is satisfied that it is reasonable. The Fourth Amendment forbids only unreasonable searches and seizures (plus warrants lacking specified characteristics), so if the injunction is reasonable, that should be good enough. This is implied by *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 215–17, 66 S.Ct. 494, 508–510, 90 L.Ed. 614 (1946), the closest to a definitive statement from the Supreme Court on the question—but maybe not very close; the case involved judicial enforcement of a subpoena duces tecum, which as emphasized in *Donovan v. Lone Steer, Inc.,* 464 U.S. 408, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984), is less intrusive than a search warrant, since it involves no entry. We need not plumb these mysteries deeper. The Commission concedes that the order—which it calls a warrant, and we an injunction—must comply with the standards of the Fourth Amendment, as of course it must if it is a warrant. We merely note that since the line between an administrative warrant and an injunction against barring entry is imperceptible in this case, and since the right to be free from unreasonable searches and seizures should not be defeated merely by labeling a warrant an injunction, the Commission's concession may be prudent.

■ We come at long last to the merits. Skil argues that section 16(b) of the Consumer Product Safety Act, quoted earlier, authorizes the Commission to inspect only records that the Commission has by rule ordered the firm to keep; and the Commis-

sion has issued no rules that require Skil to keep any records. We can find no cases dealing with this question; the closest, *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 575 (3d Cir.1980), is against Skil, but it involves the interpretation of an OSHA regulation differently worded from section 16(b) of the Consumer Product Safety Act.

Read naturally, the two sentences in section 16(b) establish separate requirements. The first empowers the Commission to make rules imposing various recordkeeping and reporting requirements on firms subject to the Consumer Product Safety Act. The second requires firms subject to the Act to "permit the inspection of appropriate books, records, and papers relevant to determining" compliance with the Act and the rules under it. This seems not to be just a requirement of permitting such inspections as may be necessary to ensure compliance with rules requiring recordkeeping or reporting. It seems rather that firms must permit such inspections of books and papers (neither mentioned in the first sentence), as well as records, as may be required to determine compliance with the Act or with rules promulgated under the Act.

The natural reading seems also the right one. The Commission's task of identifying unsafe consumer products would be impeded if it could inspect only documents specified in its rules, unless the "specification" were so broad as to constitute a blanket authorization to inspect relevant documents. The best evidence of a product's hazards is likely to be found in the files of the manufacturer or distributor—evidence consisting of consumer complaints, test reports, correspondence with consumers and insurers, legal pleadings, production reports, engineering drawings. Without the power to inspect these documents (as well as required records), the Commission cannot do its job effectively. This consideration is not decisive. Opponents of the Consumer Product Safety Commission—and there were plenty—may have had enough legislative muscle to cripple the Commission's organic act; the exception to the Commission's jurisdiction for tobacco and

tobacco products, see 15 U.S.C. § 2052(a)(1)(B), is some evidence for this speculation. If so, that is the end of the inquiry for us, as we have no authority to undo a legislative compromise unless it violates the Constitution. There is plenty of designedly ineffective legislation; the Consumer Product Safety Act may be an example. But Skil points to no evidence of this so far as the Commission's powers of inspection are concerned. The natural reading of section 16(b) does not support its position; nor does the legislative history.

■ The last question is whether the injunction complies with the limitations that the Fourth Amendment places on searches; for recall that the Commission has conceded that, for purposes of the Fourth Amendment, the injunction is a search fully subject to the amendment. An administrative search does not require the same kind of "probable cause" required in a criminal search, *Griffin v. Wisconsin*, — U.S. —, 107 S.Ct. 3164, 3170 n. 4, 97 L.Ed.2d 709 (1987), but of course the search must still be reasonable. The Commission had ample reason to believe that Skil was manufacturing a dangerously defective circular saw. The evidence of this would be found in consumer complaint files and in engineering files, and it was these that the Commission sought access to. So far so good; but the search authorized by the district court is extraordinarily broad, and the documents sought are documents Skil retains on its own initiative, rather than documents that the agency requires it to keep. Compare *Donovan v. Wollaston Alloys, Inc.*, 695 F.2d 1, 8 (1st Cir.1982), with the *A.B. Chance* case cited earlier. Skil's records go back to 1924, and the Commission wants all of them. It also wants records of all the different types of circular saw that Skil makes, even though only two of the types have been involved in the accidents that gave rise to the investigation. One might have expected the Commission to begin with current records for these types of saw and then work backward and outward should these records indicate the possibility of a broader pattern of violations.

The issue of breadth, though flagged as an important one in our decision in *Donovan v. Fall River Foundry Co.*, 712 F.2d 1103, 1110–11 (7th Cir.1983), is not addressed in the district court's opinion, thus tempting us to remand the case for further consideration of the scope of the warrant. However, all reasonable deference must be shown the Commission's judgment on the necessary scope of the search, see *Chicago Zoological Soc'y v. Donovan*, 558 F.Supp. 1147, 1153–54 (N.D.Ill.1983); the magistrate's opinion contains a detailed and plausible explanation for the scope of the warrant; the objections urged by Skil on this appeal are different from those it emphasized before the magistrate; and the proceeding has been too long delayed, and Skil's resistance too obdurate, to incline us to prolong the proceeding further. The warrant is reasonable in the circumstances, cf. *Andresen v. Maryland*, 427 U.S. 463, 479–84, 96 S.Ct. 2737, 2748–50, 49 L.Ed.2d 627 (1976), and the Commission therefore entitled to the injunction that the district court issued.

AFFIRMED.