**In the Matter of the Establishment Inspection of: KELLY–SPRING-FIELD TIRE CO.**

**No. 91 M 008.**

United States District Court, N.D. Illinois, W.D.

Dec. 11, 1992.

Cyrus A. Alexander, U.S. Department of Labor, Office of the Solicitor, Chicago, IL, for plaintiff.

Thomas H. Riley, Jr., Hinshaw & Culbertson, Rockford, IL, for defendant.

## AMENDED ORDER OF DECISION

REINHARD, District Judge.

### INTRODUCTION

■ This matter comes before the court on Kelly–Springfield Tire Company's motion to quash an administrative warrant and the Secretary of Labor's motion to show cause why Kelly–Springfield and two of its employees should not be held in civil contempt for their failure to obey the warrant.[1]

### FACTS

On October 21, 1992, the United States Department of Labor, Occupational Safety and Health Administration [OSHA], presented an application for a warrant to inspect the premises of Kelly–Springfield Tire Co., in Freeport, Illinois, based on an alleged employee complaint it had received on February 3, 1992, some eight months earlier. The complaint contained only two sentences and was nonspecific. OSHA obtained a warrant, *ex parte*, based on this application. On October 22, 1992, Kelly–Springfield filed a motion to quash this warrant, apparently contending that the underlying complaint violated the "reasonable particularity" requirement of 29 U.S.C. § 657(f)(1). When counsel for Kelly–Springfield attempted to set a hearing date for this motion to quash, he was informed that the warrant had been returned and that the application had been withdrawn by OSHA, *ex parte*, on October 27, 1992.

On November 9, 1992, John A. Rizzo, a compliance officer from OSHA appeared before Magistrate Judge P. Michael Mahoney, *ex parte*, and presented an application for an inspection warrant in order to inspect the premises of the Kelly–Spring-

---

1. Because the Secretary of Labor is not required to give advance notice of its intention to seek an inspection warrant, an employer may move before a district court to quash a warrant prior to its execution or refuse entry pursuant to the warrant and then challenge the warrant before the district court when the Secretary brings civil contempt proceedings. *Rockford Drop Forge Co. v. Donovan*, 672 F.2d 626, 630–31 (7th Cir. 1982). Such is the posture of the matter at bar.

field. The Magistrate Judge issued the warrant.

Compliance officers John A. Rizzo and Julia E. Evans served the warrant upon Duane Bartelt, Manager of Safety Employment and Industrial Hygiene. Bartelt reviewed the warrant and inquired as to whether it was a new complaint. Rizzo replied that it was not, but contained more specific information. Rizzo further stated that he and Evans were there to conduct an inspection and that they intended to videotape the inspection. Bartelt denied Rizzo and Evans access to the plant.

## ISSUES

There are three issues raised in this matter: (1) whether there existed probable cause for the issuance of the warrant; (2) whether the language in the warrant was overbroad in scope, in that it allowed for OSHA to inspect areas of the plant not identified in the complaint; and (3) whether the use of videotape is a permissible means of inspecting the ergonomics [2] of the plant.

## DISCUSSION

In enacting the Occupational Safety and Health Act of 1970 (the Act), 29 U.S.C. § 651 *et seq.*, Congress declared "it to be its purpose and policy ... to assure as far as possible every working man and woman in the Nation safe and healthful working conditions...." *In re Metro–East Mfg. Co.*, 655 F.2d 805, 807 (7th Cir.1981) (quoting 29 U.S.C. § 651(b)). To carry out the purposes of the Act, the Secretary of Labor (Secretary) is authorized

> to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, and materials therein, and to question privately any such employer, owner operator, agent or employee.

*Metro–East*, 655 F.2d at 807 (quoting 29 U.S.C. § 657(a)(2)).

The Secretary is empowered to prescribe rules and regulations which it deems necessary to carry out the responsibilities under the Act, "including rules and regulations dealing with the inspection of an employer's establishment." *Metro–East*, 655 F.2d at 807 (quoting 29 U.S.C. § 657(g)(2)). Pursuant to this authority, OSHA promulgated regulations which allow its compliance officers to "take or obtain photographs related to the purpose of the inspection" and "to employ other reasonable investigative techniques" in making their inspections. 29 C.F.R. § 1903.7(b).

## I. PROBABLE CAUSE

Kelly–Springfield first contends that the warrant is invalid because the underlying application was insufficient to constitute probable cause. Specifically, Kelly–Springfield contends that the "additional details" in the second application for a warrant provided in response to OSHA's prompting do not establish probable cause according to the requirements for an employee complaint under 29 U.S.C. § 657(f)(1).

 In order to protect an industry's Fourth Amendment right against unreasonable searches and seizures, a warrant is required whenever OSHA seeks a nonconsensual inspection of that company's premises. *In re Cerro Copper Prods. Co.*, 752 F.2d 280, 282 (7th Cir.1985). Probable cause in the criminal sense is not required. *Marshall v. Barlow*, 436 U.S. 307, 320–21, 98 S.Ct. 1816, 1824–25, 56 L.Ed.2d 305 (1978). To establish probable cause, the Secretary must show: (1) specific evidence of an existing violation of the law; or (2) that neutral and reasonable legislative and administrative standards for conducting an inspection are satisfied. *Marshall*, 436 U.S. at 320–21, 98 S.Ct. at 1824–25; *Cerro Copper*, 752 F.2d at 282. The parties are in agreement that this case does not involve the second probable cause standard, only the first.

---

**2.** It is noteworthy that ergonomics, or biotechnology, is not specifically provided for in the Occupational Safety and Health Act. Rather, it is the Secretary's position that ergonomics falls under the general duty provisions of the Act, 29 U.S.C. § 654(a)(1).

Kelly–Springfield argues that the application fails to establish probable cause because it does not identify an existing violation of any regulation because no ergonomics regulation exists. At oral argument, OSHA conceded that there were no specific regulations concerning ergonomics and argued that Kelly–Springfield violated the general duty clause of the Act, 29 U.S.C. § 654(a)(1).[3]

Kelly–Springfield counters that the application does not cite to the Act's general duty clause or to any other regulation. Because of OSHA's failure to identify a specific clause of the Act and the fact that there are no specific regulations regarding ergonomics, Kelly–Springfield, relying on *In re Metro–East Mfg. Co.*, 655 F.2d 805 (7th Cir.1981), argues that it has not received "fair warning" of what is required or prohibited by the Act. This argument is unpersuasive. The application for warrant provided the following information: [4]

1. There are approximately 70 employees on the first shift in the passenger tire building section whose duties entail the construction of tires on a machine.

2. The construction of tires requires the employees to perform a substantial number of repetitive tasks.

3. Between 10 and 30 tires are built per hour. Each tire requires multiple manual operations performed in sequence.

4. Each manual operation necessitates hand manipulation to produce the finished product.

5. As a result of this multiple hand manipulation, five employees have required surgery to correct carpal tunnel syndrome (CTS).

6. In addition to the surgeries to correct CTS, at least 10 employees have received medical treatment and/or surgery for job related repetitive motion trauma (RMT) of the shoulder, back, neck, elbow, wrist and/or hand. The complainant estimates that between 20 and 25 employees are experiencing RMT but have not sought medical attention for fear of reprisal.

7. Complainant alleges that he has observed approximately 20 of the 70 first shift employees wearing braces of some type at various times.

These alleged conditions are sufficient to lead an OSHA compliance officer to believe that there exists probable cause that an employer may be violating the general duty provision of the Act. The fact that OSHA did not explicitly state in its application that the suspected violation was of the general duty clause is not important. Under the Act, Kelly–Springfield is not entitled to any more notice than that provided in the general duty clause. If injuries exist in the numbers alleged in the application, Kelly–Springfield surely would have reason to suspect that it may not be providing its employees the safe workplace contemplated by the Act.

Kelly–Springfield next contends that *In re Cerro Copper Prods. Co.*, 752 F.2d 280 (7th Cir.1985), sets forth criteria for analyzing whether probable cause exists and that it should be granted an evidentiary hearing. This criteria includes: (1) whether the employee complaint was motivated by a desire to harass the employer; and (2) whether the employer has experienced a comprehensive, wall-to-wall inspection within the past fiscal year. *Cerro Copper*, 752 F.2d at 283. *Cerro Copper* involved a determination that there was no probable cause to merit an inspection because the legislative and administrative standards for conducting an inspection were not neutral and reasonable as required under the second prong of the probable cause test (which the parties have indicated is inapplicable to the present case). *See Cerro Copper*, 752 F.2d at 282–83. Thus, the criteria cited by Kelly–Springfield do not apply. Further, *Cerro Copper* involved the scope of a wall-to-wall plant inspection based on an employee complaint alleging hazardous conditions in specific locations in the plant.

---

**3.** 29 U.S.C. § 654(a)(1) provides as follows:
(a) Each employer—
(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are caus-ing or are likely to cause death or serious physical harm to his employees[.]

**4.** This information was also included in Rizzo's sworn affidavit attached to the application.

Thus, *Cerro Copper* is inapplicable to the instant case.

Kelly–Springfield further contends that OSHA's act of soliciting a revised complaint negates a probable cause finding. Kelly–Springfield maintains that the Act's requirement of reasonable particularity for an employee complaint does not contemplate the extensive revision of an employee complaint at OSHA's urging. This contention is patently meritless. Evans, in her affidavit attached to the application for a warrant, states that she interviewed complainant to obtain more specific information regarding the complaint. This court declines to find anything inherently wrong in seeking a second warrant after securing more particularized details.

Kelly–Springfield next cites *SEC v. Wheeling–Pittsburgh Steel Corp.*, 648 F.2d 118, 123–25 (3d Cir.1981) in support of its contention that it should be granted a probable cause hearing because OSHA's informant had an improper motive. This case is not persuasive, as it deals with the SEC and not OSHA, and a subpoena as opposed to a warrant. For this court to grant a request for an evidentiary hearing, Kelly–Springfield must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). This court will not allow an evidentiary probable cause hearing as Kelly–Springfield has made no such showing.

## II. OVERBREADTH

Kelly–Springfield contends that the scope of the search allowed by the warrant is unconstitutionally overbroad because the warrant not only allows the inspection of the area of the plant alleged in the complaint to contain hazardous conditions and work areas in "plain view," but also other areas. The warrant does not generally allow inspection of other areas and provides, in pertinent part, as follows:

> as well as to any hazardous work areas, procedures and/or working conditions in plain view of the compliance officer and to all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, and all other things therein (including a review records required by the Act and other records required by the Hazard Communication Standard (29 CFR 1910.1200) which are directly related to the purpose of the inspection—such records do not include medical records as defined in 29 CFR 1910.20(c)(6)) bearing on whether this employer is furnishing to its employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical injuries to its employees, and whether this employer is complying with the occupational safety and health standards promulgated under the Act and the rules, regulations, and orders issued pursuant to the Act.

Kelly–Springfield's argument is not persuasive. In *Rockford Drop Forge Co. v. Donovan*, 672 F.2d 626 (7th Cir.1982), the Seventh Circuit Court of Appeals rejected a similar argument concerning substantially similar language. *Rockford Drop Forge*, 672 F.2d at 631. Accordingly, this court finds that the warrant is not overbroad and that the inspection is limited to those areas specified in the complaint and plain view areas, as in *Rockford Drop Forge*.

■ Kelly–Springfield next contends that the warrant is overbroad because it allows OSHA to videotape during the inspection whereas the Act does not specifically provide for videotaping.[5] Kelly–Springfield contends that if OSHA wishes to use videotape during its inspections, it should amend its rules to provide for such

5. In this regard, Kelly–Springfield notes that the Department of Health and Human Services authorizes the use of videotape in its Occupational Safety and Health Research and Related Activities regulations, 42 C.F.R. § 85(a).5, which relate to the National Institute for Occupational Safety and Health (NIOSH), while the Secretary omits any reference to videotape in 29 C.F.R. § 1903.7(b), entitled Occupational Safety and Health Administration, Department of Labor, the applicable regulation in the instant case.

*videotaping.* OSHA maintains that the use of videotape is a reasonable investigative technique, as indicated in its field operations manual.[6]

In the present case, OSHA seeks civil contempt sanctions against Kelly–Springfield for failing to permit the investigation using videotape. Nowhere in the applicable regulations is the use of videotape identified as a "reasonable" investigative technique.[7]

While it may seem "reasonable" to include videotape as a reasonable investigative technique, especially since photographing is specifically allowed in the regulations, *Metro–East,* principally relied on by Kelly–Springfield, is arguably contrary to the Secretary's position. In *Metro–East,* OSHA sought to use personal sampling devices to "take environmental samples" pursuant to 29 C.F.R. § 1903.7(b). The Seventh Circuit held that OSHA could not require the employer to attach these devices to its employees for investigative purposes. The court held that "[i]t would pose no hardship on the Secretary to amend the rules to give 'fair warning' of the types of investigation deemed 'reasonable.'" *Metro–East,* 655 F.2d at 811. However, the court did state, "our holding does not, of course, preclude the use of the personal sampling devices by OSHA's own employees during their inspections." *Metro–East,* 655 F.2d at 812 n. 13. Thus, it was not the use of sampling equipment *per se,* that was unreasonable in *Metro–East,* but rather the practice of requiring a company's employees to wear the sampling equipment. *Metro–East,* therefore, is not persuasive. There is no such intrusiveness on the employee's person in the case at bar.

Because the Secretary could have easily amended the regulations to include the use of videotape, this court is somewhat reluctant to allow the use of videotape. Nevertheless, this court finds the use of video-

tape to be a reasonable investigative technique, not substantially different from the use of photographs. The use of videotape will allow OSHA to more accurately assess any ergonomics violations than the use of still photographs because it will allow the experts to observe the work processes in "real time."

Kelly–Springfield maintains that allowing OSHA to videotape at its Freeport plant may have severe implications with regard to its trade secrets and confidential processes, including its method of tire-mold changes and engineering processes. Purportedly, Kelly–Springfield's competitors would be able to glean any such information from the videotape, if it ever came into their hands.

This court orders that any videotape made by OSHA during its inspection of Kelly–Springfield's Freeport plant must be returned immediately upon completion of the investigation or litigation, if any, resulting from the findings of said investigation. OSHA is not to release the videotape to any person not an employee of the Department of Labor, except outside consultants, if any, hired by the Secretary. Should an outside consultant be asked to view the videotape, the Secretary must comply with the following protective measures:

(1) At a reasonable time before an outside consultant views the videotape, the Secretary shall provide Kelly–Springfield with a resume of the consultant. Kelly–Springfield may challenge the selection of the outside consultant on the grounds that the consultant is closely aligned with a competitor of Kelly–Springfield. Any such challenge shall be ruled upon by this court.

(2) The Secretary will require the outside consultant to sign a written oath not to disclose any information contained in the

---

**6.** This court notes that the manual is not a regulation and has no legal or binding force. *See Metro–East,* 655 F.2d at 810 n. 7.

**7.** While the regulations do not provide for videotaping, they do discuss certain precautions which compliance officers must comply with

when taking photographs. *See* 29 C.F.R. § 1903.7. These precautions are directed towards safety, whereas Kelly–Springfield's trepidations concern the subject of trade secrets, a topic covered under another provision in the Act, 29 C.F.R. § 1903.9.

videotapes, except to the Secretary or in Commission litigation; and

(3) Any contract entered into by the Secretary with an outside consultant will contain a confidentiality agreement which specifies Kelly–Springfield as a third party beneficiary.

Any outside consultants hired by the Secretary shall be subject to the requirements and sanctions set forth in Section 15 of the OSH Act and set forth in 29 C.F.R. 1903.9. If litigation before the Occupational Safety and Health Review Commission results, and Kelly–Springfield, pursuant to applicable Review Commission Rules of Procedure, asserts a trade secret claim, the Secretary shall not object to Kelly–Springfield's request that the presentation of the video be *in camera*.

## CONCLUSION

Kelly–Springfield's motion to quash is denied. The Secretary's motion for an order holding Kelly–Springfield, Gary Kiefer and Duane Bartelt in contempt of court is granted. Kelly–Springfield, Kiefer and Bartelt may purge themselves of contempt by allowing OSHA to inspect the plant in compliance with the warrant and the decision of this court. The court further denies the Secretary's motion to strike the untimely filing (by several hours) of Kelly–Springfield's letter brief.